# CHAPMAN AND WIFE v. HUGHES, ET AL.

1. A bill of sale absolute on its face, may be shown by parol evidence to be a mortgage, or upon a trust. But when the answer denies that it was a mortgage, or executed upon a trust, and insists upon it as an absolute

sale, the answer will prevail, unless overturned by clear and convincing proof.

Writ of Error to the Chancery Court of Shelby.    Before the Hon. W. W. Mason.

THE plaintiffs in error file their bill, alledging that John Edis Hughes, departed this life intestate, and that Simon Chapman took out letters of administration on his estate, which were granted by the orphans' court of Shelby.    That the estate was reported insolvent, but the administrator has paid all the debts, and having come to a final settlement he was discharged from the administration.

That John Edis Hughes being a young man, and desirous of travelling, executed to the defendant, Abner A. Hughes, a bill of sale for seven slaves, which was absolute on its face, but which was intended as a mortgage, for the purpose of paying the defendant a small sum of money, about $100. That during the life of John Edis Hughes, the defendant often acknowledged that he held the slaves in trust for the deceased, but that since his death, he sets up an absolute right to them.    That said John Edis died, leaving no widow or children him surviving, and complainant's wife is a sister, and distributee of said deceased.    The other distributees declining to join in the bill, they are made defendants—some of whom answer, admitting the allegations ; others do not answer.

Abner J. Hughes, against whom relief is sought, answers the bill, and denies that he received the slaves in trust for John Edis Hughes, and denies that the bill of sale was intended as a mortgage to secure any sum of money ; but states that he purchased them, on a *bona fide* consideration, as shown in the bill of sale.    He demurs to the bill, and assigns as causes of demurrer, that the complainant had a full right, as administrator, to recover said slaves at law. 2. That the complainant is precluded from the aid of a court of chancery, from his laches, in not suing whilst he was administrator.

The relief sought was, that the defendant, Abner J. Hughes, be decreed to account for the hire and services of the slaves, and that the distributive share of those services, and the slaves, be allotted to complainant, in right of his wife. The testimony is given in the opinion of the court.

The chancellor dismissed the bill on the final hearing, and to revise this decree this writ of error is brought.

MORRIS, for plaintiff in error, cited Thorington v. Carson, 1 Porter, 257; Eiland v. Radford, 7 Ala. 726; Hudson v. Isbell, 5 S. & P. 67; May v. May, 2 Porter, 414; Patterson v. Ware, 10 Ala. 449.

WOODWARD, contra.

DARGAN, J.—It is a well settled rule of law, that a conveyance of property, whether real or personal, absolute on its face, may be shown to be a mortgage.    See 5 Paige, 9; 6 Johns. Ch. 416; 2 J. J. Marsh. 471; English v. Lane, 1 Porter's Rep. 328.

If an absolute conveyance is executed, upon the promise of the grantee to hold the property upon trusts, or conditions which are not reduced to writing, they may be established by parol proof, if the grantee afterwards assert an absolute estate for his own use.    See Kenedy's Ex'rs v. The Heirs of Kenedy, 2 Ala. Rep. 589; 6 Paige, 355.

The ground on which equity will permit parol proof, to show the conveyance to be a mortgage, or that it was executed upon trusts, which the grantee denies, is, that it would be a fraud to permit the grantee to hold the property discharged of the trusts and conditions, which were originally attached to the conveyance, and which he promised to perform. See 1 Paige, 147; Kenedy's Heirs v. Kenedy's Ex'rs, 2 Ala. 588, 589; 1 Dall. Rep. 424.

Although the rule of law is settled, that parol evidence cannot be received to vary the terms of a written contract, yet no written evidence will preclude a court of equity from inquiring into, and granting relief against a fraud; and if one receive a deed absolute on its face, but upon certain parol conditions or trusts, which he agreed to fulfill, and he

afterwards corruptly deny the terms, on which he received it, and assert an absolute title to himself, it would be certainly difficult to maintain, that such conduct would not amount to a fraud—hence the courts do not deny the truth of the general rule, that parol proof cannot be received to vary the terms of a written contract, when they permit parol proof to show this fraud on the part of the grantee. But this parol proof should clearly show the fraud. That is, that the deed was intended, and accepted by the grantee as a mortgage, or upon trusts which he promised to execute, and perform; and if neither the one or the other is shown, to the satisfaction of the chancellor, the bill must be dismissed, for no relief could be granted. Hence it is necessary to ascertain, whether the parol proof in this case, establishes the one or the other. That is, does it show that the bill of sale executed by John Edis Hughes, was intended as a mortgage, or that it was executed and accepted upon any trust. The bill of sale is absolute on its face, and the answer denies that it was intended as a mortgage, or that it was executed upon any trust; but that it was an absolute, and *bona fide* contract. The only material evidence offered by the complainant, is the testimony of Sarah Hughes, who says that Abner Hughes told her, that he could not dispose of the negroes, as they belonged to John Edis Hughes, and that it was a sham trade.

Mary Poindexter says, she heard Abner Hughes say, he was to have the woman and children for their victuals and clothes, and had hired the two boys, and was to return them in two years. Mary Harper saw Abner Hughes hand John Edis Hughes some papers, when the bill of sale was executed, which John Edis Hughes tore up—she saw nothing more.

Webb Kidd, examined on the part of the defendant, says, that John Edis Hughes told him, before the trade, that he was anxious to sell the negroes to his brother, Abner J. Hughes, but that Abner was unwilling to go into the trade, and requested witness to urge Abner to buy them; which he accordingly did. The reason John Edis assigned for wishing to sell them was, that they were of no service to him, and would be to his brother.

Rebecca Harper was re-examined on the part of the res-

pondent, who states, that John Edis Hughes told her, he was about selling the negroes to Abner Hughes, and requested her to remain in the room until the writings were drawn. She remained, and saw Abner Hughes give John Edis a note, and John E. Hughes then remarked, you must pay the note to the estate of Robertson, which Abner Hughes consented to do. The note due to the estate of Robertson was given for one of the slaves, and was about $900. There is no other testimony that can be considered as entitled to any weight whatever, and we do not think it sufficient to establish either a mortgage or a trust. Indeed, there is no proof whatever, that John Edis Hughes, owed Abner Hughes any thing; and as there is no debt established, the transaction cannot be a mortgage, for a debt is the very essence of a mortgage, and the terms of the trade, the two brothers seemed disposed to keep to themselves; and although John Edis Hughes lived some eighteen months after it was made, he never claimed the slaves, nor asserted any interest or right to them. The testimony of Kidd shows, that John Edis was anxious to make the trade. Rebecca Harper was present when the bill of sale was signed, saw a note pass, and heard John Edis Hughes say, that Abner was to pay a debt due the estate of Robertson, but heard no declaration of any trust.

Under this proof, we fully agree with the chancellor, that it is too uncertain and unsatisfactory, to establish a trust, in opposition to the answer of the defendant, and the bill of sale which is absolute on its face.

Let the decree be affirmed.

CHILTON, J., not sitting.