# Knaus *v.* Dreher.

*Bill in Equity to have Conveyance declared a Mortgage.*

1. *Declaring absolute conveyance to be a mortgage.*—A conveyance of lands, absolute on its face, may be declared and enforced as a mortgage in equity, on parol evidence; but the evidence must be clear, consistent, strong and convincing; and the evidence in this case, which is in direct conflict on material points, and inconsistent with the undisputed facts, is not sufficient to uphold such a decree.

APPEAL from Birmingham City Court.
Heard before Hon. H. A. SHARPE.

JAMES J. GARRETT, for appellant.

SMITH & LOWE, *contra.*

STONE, C. J.—Dreher and wife, by absolute deed, executed, witnessed and delivered, conveyed land to Knaus, with customary covenants of warranty. The deed was executed December 2, 1882. The present suit, instituted in March, 1885, is a bill, seeking to have this deed declared a mortgage-security for the payment of money, avers that the debt has been paid, and if mistaken, tenders payment of any balance, and prays that title be devested out of Knaus and vested in Dreher. It seeks relief only as to one undivided half of the land described in the pleadings, admitting that the other half is both legally and equitably the property of Knaus.

Cases of this class have been very often before this court, and it has been uniformly held that such claim may be established by parol proof, if sufficiently clear and strong to meet the requirements of the rule. But to entitle a complainant to relief in such cases, the testimony must be clear, consistent, strong and convincing. It has sometimes been said it must be stringent.—*McKinstry v. Conly*, 12 Ala. 678; *Chapman v. Hughes*, 14 Ala. 218; *Bryan v. Cowart*, 21 Ala. 92; *Brantley v. West*, 27 Ala. 542; *Harris v. Miller*, 30 Ala. 221; *Phillips v. Croft*, 42 Ala. 477; *Parks v. Parks*, 66 Ala. 326; 2 Brick. Dig. 272, §§ 319, 320.

[Knaus v. Dreher.]

There is an additional element which enters into such inquiry. To establish the proposition that the conveyance, absolute in form, was in intention and in fact only a mortgage-security, there must be a continuing binding debt from the mortgagor to the mortgagee to uphold it; a debt in its fullest sense. Not a mere privilege reserved in the grantor to pay or not at his election, but a debt which the grantee can enforce as a debt, and for its collection may foreclose the conveyance as a mortgage. Where there is no debt, there can be no mortgage; for if there is nothing to secure, there can be no security.—*Eiland v. Radford*, 7 Ala. 724; *West v. Hendrix*, 28 Ala. 226; *Swift v. Swift*, 36 Ala. 147; *Peoples v. Stolla*, 57 Ala. 53; *Haynie v. Robertson*, 58 Ala. 37; *Logwood v. Hussey*, 60 Ala. 417; *Douglass v. Moody*, 80 Ala. 61; *Perdue v. Bell*, 83 Ala. 396; 1 Jones on Mort. § 267.

The oral testimony in the case before us is in lamentable conflict. Conflict, not alone as to the main inquiry, whether it was agreed that the conveyance should operate only as a mortgage, but as to the attendant facts which, if believed, tend collaterally to fortify or weaken the testimony bearing directly on the main question. It is difficult to credit this discrepancy to honest mistake, or imperfect memory. Only the parties to the conveyance testify to any actual knowledge, whether there was an agreement before the deed was executed that it should only operate as a mortgage, and their testimony is in direct conflict. Many, very many witnesses testify that Knaus admitted he was to reconvey half the land to Dreher, when the latter should re-pay to him his half of the purchase-money; but many, and the most important of these witnesses were closely related to Dreher, and were frequent inmates of his household. Some of the most damaging of these alleged admissions are testified to have been made by Knaus at and near Birmingham between the 22d and 27th December, 1883, and the witnesses state circumstances calculated to fortify their recollection of dates. Against this, many witnesses, not related to either of the parties, testify that during all that time Knaus was at Broken Arrow, thirty-five or forty miles distant from Birmingham, and they testify to circumstances calculated to impress the fact and the time upon their memories. Knaus denies all these imputed admissions, and testifies that he was not at or near Birmingham, but was at Broken Arrow, and did not see any of these witnesses during the time they testify he made the admissions. Looking alone at the oral testimony, it is doubtful if it be sufficiently "clear,

consistent and convincing" to overcome the presumptions which are raised by the absolute conveyance.

There are important facts in the case, about which we have discovered no conflict in the testimony. Early in the year 1880 a contract was entered into between King, former owner, and Dreher individually, by which the latter contracted to purchase from the former the lot of land (ten acres) which is the subject of this suit. A small cash payment was made, and notes of fifty dollars each, bearing interest, and payable at intervals of six months, were given by Dreher for the balance. The whole purchase-money was about four hundred dollars. Before the close of the year 1880 Dreher took Knaus in as a joint purchaser with himself, each to pay half of the purchase-money, and the two to become equal owners of the land. King had given them only an obligation to make title. A cabin was constructed on the premises, which was occupied by Dreher and Knaus, the former having a family, the latter none. Payments were made during the year 1880, and on January 1, 1881, there remained unpaid of the purchase-money precisely three hundred dollars, principal and interest included.

In March, 1881, King and wife executed a deed, reciting as consideration four hundred dollars received from John Knaus and Reinhard Dreher, conveying the lands involved in the suit, with covenants of warranty to them by name; and to their heirs and assigns. The habendum clause is also to them by name, and to their heirs and assigns. In the granting clause there is an unfilled blank, their names being omitted. At that time Knaus and Dreher executed their joint notes of fifty dollars each, payable at intervals of six months, with interest, for the balance of the purchase-money, three hundred dollars.

About the first of December, 1882, half of the three hundred dollars had been paid, leaving unpaid one hundred and fifty dollars, with interest. Knaus obtained counsel, and expressed dissatisfaction with his deed, for reasons which he soon afterwards explained to the same counsel in the presence of Dreher. His statement was that all the purchase-money that had been paid had been paid by him, Knaus, that he was ready to pay, and wished to pay the balance, and that he wanted the title conveyed to him as his own property. Dreher admitted this, admitted that he was unable to pay for the land, and expressed a willingness for Knaus to finish paying for it, and he and his wife would execute a deed to

Knaus therefor. Counsel advised that King execute a second and perfect deed to Knaus and Dreher, and that Dreher and wife then convey to Knaus. This was done, counsel drawing the deeds, and being a witness to the one executed by Dreher and wife to Knaus. Counsel read and explained the deed to Dreher and wife, and they executed the same voluntarily. During none of these interviews was a word said by any of the parties, tending to show any interest, right, or claim retained in Dreher. Knaus thereupon took up and cancelled the remaining purchase-money notes held by King, although they were none of them due.

During the year 1883, Knaus, with his own means, built a second and better house on the premises at a cost of from two hundred and fifty to three hundred and seventy-five dollars, and, in the fall, soon after its completion, the parties to this suit moved into it and occupied it as a dwelling, as they had previously occupied the cabin. This continued until the spring of 1884, when Dreher and his family moved to another residence, and have not since occupied the premises sued for.

When the land was purchased from King, the agreed price was at or above the market value. In December, 1882, there had been a slight increase, but not very marked. When this suit was brought the estimated value irrespective of the improvements, was more than double the agreed purchase price.

The intendment growing out of Dreher's absolute deed to Knaus makes a strong *prima facie* case, and the corroboration furnished by the uncontroverted facts recited above, reduces the probative force of the complainant's testimony far below the requisite standard. The bill ought to have been dismissed.—Code of 1886, § 675.

The decree of the chancellor is reversed, and a decree here rendered dismissing complainant's bill.

Reversed and rendered.