# Rodgers *v.* Burt.

## *Bill to Declare A Deed A Mortgage and to Redeem.*

### (Decided June 18, 1908. 47 South. 226.)

1. *Mortgages; Deed as Mortgage; Evidence.*—Parol Evidence is admissible to show that a deed absolute on its face was intended to be a security for a debt and so to be a mortgage; but to overcome the presumption that an absolute conveyance is what it purports on its face to be, and to establish its character as a mortgage, the evidence must be clear, unequivocal and convincing.

2. *Same.*—A continuing liability contracted before or contemporaneously with its execution is esential to the creation of a mortgage, although the relation of debtor and creditor may have existed before and at the time of the transactions, and a test by which to determine whether a conveyance is a deed or a mortgage is whether the debt is discharged or not by the conveyance.

3. *Same.*—Where it appears that no note or other evidence of debt was given between the grantor and grantee, or to show a continuing liability, such fact is a strong inference that the debt was extinguished and that the transaction between the grantor and grantee was a sale and not a mortgage.

4. *Same; Construction; Absolute Deed as Mortgage.*—Where no oppression or undue advantage appears to have been exercised and the consideration is not so inadequate as to force the conclusion that the transaction was not fair and bona fide, a disparity between the consideration recited in the deed and the actual value of the land is not conclusive that a mortgage instead of a deed was intended.

5. *Same; Concurring Intention of Parties.*—It is the concurring intention of the parties to an instrument which determines its character as a deed or mortgage, and the ascertainment of different intentions and understanding does not make a case in which equity will construe it to be a mortgage.

6. *Evidence; Admissions; Party in Interest.*—Verbal admissions or declarations made by a party in interest should be received with caution, and the value of such evidence depends greatly upon its consistency with other evidence not subject to such infirmities.

APPEAL from Bibb Chancery Court.

Heard before Hon. THOMAS H. SMITH.

Bill by L. A. Burt against J. M. Rodgers to have a conveyance absolute on its face declared a mortgage.— From a judgment for complainant, respondent appeals. Reversed and rendered.

JOHN T. ELLISON, for appellant. The court should have sustained the demurrers to the bill. The intention must have been that of the grantee as well as of the grantor, and this should be averred.—*Reeves v. Abercrombie,* 108 Ala. 537; *West v. Hendricks,* 28 Ala. 234; *Smith v. Smith,* 45 South. 170. The measure of proof required in such case is well understood.—*Reeves v. Abercrombie, supra; Knaus v. Dreher,* 84 Ala. 319; *T. C. I. & R. R. Co. v. Wheeler,* 125 Ala. 541; 1 Jones on Mortgage, sec. 335. Inadequacy of price or consideration alone will not convert an absolute conveyance into a security for the payment of money.—*West v. Hendricks, supra;* 2 Mayf. 676. No evidence of indebtedness appears, and this is significant.—Authorities supra; *Adams v. Pilcher,* 92 Ala. 477.

LOGAN & FULLER, for appellee. This cause should be affirmed on the authority of the following cases.— *Byon v. Powell,* 78 Ala. 354; *Smith et al. v. Smith, et al.,* 45 South. 168; *Turner v. Wilkerson,* 72 Ala. 366; *Thomas v. Livingston,* 40 South. 504.

DENSON, J.—The bill in this case is filed by the grantor in a conveyance of lands absolute on its face, against the grantee, to have the conveyance declared in reality a mortgage, and praying that the grantee be let in to redeem the lands therein conveyed. The principle underlying the doctrine invoked by the bill is "that it would be a virtual fraud for the grantee to insist upon the deed as an absolute conveyance of the title, which had been intentionally given to him, and which he had knowingly accepted, merely as a security, and therefore in reality as a mortgage." 3 Pom. Eq. Jur. § 1196. The doctrine prevails in this state that in equity parol evidence is admissible to show that a deed absolute on its face was only intended to be a security for the pay-

ment of a debt, and thus to be a mortgage.—*Peagler v. Stabler,* 91 Ala. 308, 9 South. 157; *Adams v. Pilcher,* 92 Ala. 474, 8 South. 757; *Reeves v. Abercrombie,* 108 Ala. 537, 19 South. 41. While this is true, the courts have established the rule that, to overcome the presumption which arises that the instrument is what it purports on its face to be, an absolute conveyance of the land, and to establish its character as a mortgage, the evidence must be clear, unequivocal, and convincing.— *Brantly v. West,* 27 Ala. 542, 552; *Reeves v. Abercrombie, supra,* and cases cited in the opinion in the latter case. The chancellor has held that the evidence comes up to the requirements of the rule, and has decreed the relief prayed by the bill. After due consideration we are unable to concur with the chancellor in his conclusions, and will state our reasons for reaching the opposite decision.

The complainant was indebted to Cruise & Splawn, which debt was secured by a mortgage on 74 acres of land and some cattle. The mortgage was past due, and the land was advertised for sale under its terms. The respondent paid Cruise & Splawn the amount of their debt, and had the note and mortgage assigned to himself. The contention or theory of the complainant, as averred in the bill, is that respondent paid the debt and took the assignment in pursuance of an agreement, made with complainant, that he would pay Cruise & Splawn, have the assignment made to himself, and "give complainant a chance to pay off the debt;" that afterwards respondent went to the house of complainant and "demanded security from complainant in a deed to the land, and complainant and respondent then and there agreed that a deed should be executed conveying the land to him (respondent), with the understanding that complainant would have the right to redeem the land

at any time within two years from the date of the said deed, by simply paying the sum that was actually due with the interest thereon"; that on the 5th day of January, 1906, complainant and his wife executed the deed to the land in pursuance of that agreement. The answer admits the payment of complainant's indebtedness to Cruise & Splawn by the respondent and the assignment of the debt and the mortgage to him; but it specifically denies that the payment was made and the assignment taken under the agreement alleged, denies that any such agreement was made, and affirmatively alleges that the payment was made and that the assignment was taken under an agreement, made between complainant and respondent, that if respondent would "stop the sale, pay off the mortgage, and have the same transferred to respondent, then complainant would make respondent an absolute deed to the land, provided respondent would release certain personal property of complainant that was conveyed by the mortgage." It is then averred in the answer that respondent did release the personal property, as he had agreed to do, and that the deed was then executed, in compliance with the agreement. The conveyance offered as evidence is in fee, with a covenant of warranty, and there is no defeasance, either in the conveyance or in a collateral paper; nor is there any admission of a parol agreement that would qualify the terms of the conveyance. So that the sole issue involved is whether the conveyance was intended as a mortgage or an unconditional sale.— *Peagler v. Stabler, supra; Rose v. Gandy,* 137 Ala. 329 34 South. 239.

We have seen that a higher and more satisfactory character of proof is required to establish that an instrument or conveyance is not what it purports to be than is necessary in ordinary civil cases. Generally a

mere preponderance is sufficient; but, when parties deliberately execute a written conveyance, there is a strong presumption that it expresses their intentions, and more than a bare preponderance of parol proof is required to remove this presumption and to show a contrary intention.—*Rose v. Gandy,* 137 Ala. 329, 34 South. 239; *Reeves v. Abercrombie,* 108 Ala. 537, 19 South. 41; *Adams v. Pilcher,* 92 Ala. 477, 8 South. 757. As the bill and the answer are diametrically opposed to each other, so the evidence of complainant is in irreconcilable conflict with that of the respondent. This is usual in such cases. If the parties did not disagree, there would be no cause for an action. So the evidence of other witnesses must be looked to in determining the issue. Although the evidence shows that complainant is an illiterate, we think it abundantly shows he knew the difference between a deed and a mortgage. The bill does not aver any fraud or oppression on the part of respondent, and the proof likewise fails to disclose either. Confessedly, when the indebtedness of complainant to Cruise & Splawn, with the accompanying mortgage was paid by and assigned to respondent, the relation of debtor and creditor arose between complainant and respondent, and it may be conceded the respondent in that respect occupied the position of mortgagee; but there is no reason why a mortgagee should not, by contract subsequent to the execution of the mortgage, purchase from the mortgagor the equity of redemption or obtain a release of the statutory right of redemption, provided he do so fairly and for an adequate consideration. Circumstances may be such as to render such a sale mutually beneficial, and entirely optional on the part of the mortgagor, uninfluenced by the relation of the parties."— *Peagler v. Stabler,* 91 Ala. 308, 310, 9 South. 157, and cases cited.

It is conceded that this debt formed a part of the consideration of the deed; but the point of controversy in this respect is whether or not the debt was extinguished by the giving and acceptance of the deed. "One of the tests, in cases of this sort, by which to determine whether the conveyance is a sale or a mortgage, is to be found in the question whether the debt was discharged or not by the conveyance." 1 Jones on Mort. § 267, 272; *Adams v. Pilcher*, 92 Ala. 476, 8 South. 757; *Vincent v. Walker*, 86 Ala. 333, 336, 5 South. 465; *Martin v. Martin*, 123 Ala. 191, 26 South. 525; *West v. Hendrix*, 28 Ala. 226; *Perdue v. Bell*, 83 Ala. 396, 398, 3 South. 698. As was tersely said in the case last cited: "A continuing liability, antecedent or contemporaneously contracted, is essential to the creation of a mortgage, though the relation of debtor and creditor may have existed before and at the time of the transaction."—*Peeples v. Stolla*, 57 Ala. 58; *Knaus v. Dreher*, 84 Ala. 319, 4 South. 287. What is the evidence in relation to this point? The wife of the complainant testified that the note and mortgage were turned over to him by the respondent when the deed was executed. The complainant admits that he received the note and mortgage. No note, or other evidence that complainant was to repay the money, or to show a continuing liability, was given or taken. While the fact is not conclusive, it is a strong circumstance; the value of it depending upon all the facts and circumstances with which it is connected, tending to show that the debt was extinguished and that the transaction was a sale and not a mortgage.—*Perdue v. Bell*, 83 Ala. 396, 400, 3 South. 698; *Adams v. Pilcher*, 92 Ala. 474, 476, 8 South. 757; *Rose v. Gandy*, 137 Ala. 329, 34 South. 239; *Robinson v. Farrelly*, 16 Ala. 472, 478; *Locke's Ex'r v. Palmer*, 26 Ala. 312, 323; *Conway v. Alexander*, 7 Cranch (U. S.) 218, 3 L. Ed. 321.

But this is not all. The respondent testified that he turned over to the complainant the cattle covered by the mortgage, with the exception of one yearling; and complainant does not deny receiving them. He also admits that he was to give the yearling not turned over to the respondent for extra trouble to which respondent had been put. It is further shown by the testimony of the complainant that the cattle released and turned over to him were of the value of $61. This is some corroboration of the respondent's answer in respect to the terms on which, as therein averred, he agreed to pay the debt of complainant to Cruise & Splawn, and also of his testimony in that respect, and therefore tends to show that the debt was extenguished by the giving and taking of the deed. Moreover, the complainant nowhere in his evidence testifies that the liability on him was continuing after the execution of the deed. To convert the instrument into a mortgage, there must be a continuing, binding debt, in its fullest sense—"not a mere privilege reserved in the grantor to pay or not at his election, but a debt which the grantee can enforce as a debt, and for its collection may foreclose the conveyance as a mortgage. * * * If there is nothing to secure, there can be no security."—*Knaus v. Dreher,* 84 Ala. 319, 320, 4 South. 287. Furthermore, if only a mortgage was intended by the deed, what purpose did the parties have in view to be accomplished? The grantee already had a valid mortgage from the grantors, not only on the land, but on several head of cattle besides, to secure the indebtedness; and the giving of an absolute deed, if intended as a mortgage, was entirely superfluous.—*Adams v. Pilcher, supra; Martin v. Martin,* 123 Ala. 191, 196, 26 South 525.

As has been stated, the evidence of the litigants in respect to the agreement under which the debt was

7 R

paid to Cruise & Splawn is in irreconcilable conflict. It
is sought to corroborate complainant's testimony by dec-
larations of the respondent. In respect to the conver-
sation between complainant and respondent, the night
before the deed was executed, Mrs. Burt, wife of com-
plainant, in her testimony corroborates the testimony
of complainant to the effect that he said to Regors he
was to have two years in which to redeem the land, and
that respondent said he "aimed for complainant to have
his land back." The respondent denies that anything
was said about redemption, or payment back of the
money, and testifies substantially that the conversation
was in respect to the time of execution of the deed. Mrs.
Burt testified that Church was in the yard with Rog-
ers and Burt at the time the conversation occurred;
that she did not see him, but heard him talking. Burt
testified that Church was not there. Mrs. Burt further
testified that Burt went out to where Rogers and Church
were. Burt testified that he stood in the door and on the
step; that Mrs. Burt was sitting in the house, between
the door and the fire, and Rogers was sitting on his
horse, about ten feet from the door. Burt testified that
on the day the deed was executed Rogers and Crowe
(the justice of the peace) came to the house, and that
Rogers said he had come to fix up the papers; that he
(Burt) said, "Well understand, gentlemen, I am deed-
ing this land with the understanding that I can redeem
it in two years;" and that Rogers said: "I don't really
need the land. All that I want is the money and the
interest on it, if you get ready to redeem it inside of
two years." He testified: "I think that was all the
conversation between Rogers and myself." He further
testified that when the statements were made, or the
conversation occurred, Rogers and Mrs. Burt were three
or four feet from him, and Crowe was five or six feet

[Rodgers v. Burt.]

from him. Crowe testified that he went to Burt's house
with Rogers; that he spoke to Burt, saying, "I have come
over here to do some work;" that Burt.said, "All right;"
that he (Crowe) had the deed in his hand, and that
Rogers had the mortgage; that he and Rogers compared
the deed and mortgage in respect to the description of
the land, and, finding them correct, he read the deed to
Mr. and Mrs. Burt; that he signed Burt's name to the
deed, and Burt made his mark; that Mrs. Burt signed
the deed also, and that he examined Mrs. Burt, sepa-
rate and apart from her husband, in regard to her signa-
ture. He testified, further, that he did not hear Burt
say anything about redeeming the land in two years;
that Burt said nothing to him, or to Rogers in his pres-
ence, about redeeming the land; that he did not hear
Rogers say to Burt that he could "redeem the land,
that all he wanted was his money;" that, when the deed
was signed, witness turned it over to Rogers, and Rogers
turned the mortgage over to Burt; and that he thought
Rogers said to Burt, "Now you have your cattle."

It will not do to say that Burt made the statement
in respect to the redemption and that Crowe might not
have heard it, because Burt's testimony that Crowe
was within five or six feet of him and that the statement
was made to both Crowe and Rogers is a clear refuta-
tion of such a suggestion. Nor will it suffice to say the
conversation in respect to redemption occurred between
Burt and Rogers after they retired from the room, for
Burt's testimony is to the effect that it occurred in the
room, and immediately preceeded the execution of the
deed, and, so far as his evidence goes, nothing was said
between him and Rogers, after they withdrew from the
presence of Crowe and Mrs. Burt, in respect to the re-
demption or anything else. Rogers' testimony is to the
effect that not a word was said, by Burt or himself, in

respect to Burt's being allowed to redeem the land; and we think this corroborated by the testimony of Crowe. It is somewhat remarkable that Mrs. Burt gave no testimony in respect to the conversation testified to by Burt as having taken place on the day the deed was executed. It does not impress us that her failure to testify was the result of neglect on the part of counsel to propound interrogatories in respect to the matter, nor of careless omission on her part; for surely, if the conversation occurred as Burt testified it did, Mrs. Burt would have remembered so important a matter. She did testify that when the deed was executed Rogers turned the note and mortgage over to Burt. So it seems clear to us that, in respect to the conversation there and to the acts of the parties, the weight of the evidence favors the respondent's version of it.

But it is said that Rogers, on the day the deed was executed, told Stewart that he had taken up a mortgage for Burt on some land and had given Burt the right to redeem it, the same as if it had been sold under a mortgage sale. Stewart did give testimony to that effect. Rogers denies making such a statement. His evidence in respect to the conversation with Stewart is as follows: "I stepped to the door and saw George Stewart coming to the house. He asked me what we were doing there, and I told him that Burt had made me a deed to this land. He said he was certainly sorry for Mr. Burt. He said could Burt redeem it, and I told him he could not. He said he would like to tell Mr. Burt that he could redeem it; that he was a good saw hand. I told him he could tell him what he wished to, but there was no redemption for him. That is all that was said. I did not tell him that he would have the same right to redeem by deed as he would have under a mortgage. I did not tell Stewart that Burt could

redeem, or that I would let him redeem." Stewart's evidence, and his subsequent connection with the matter (his visit, in company with Bolling and Burt, to Rogers, to make the tender), manifest his bias in favor of Burt. Taylor and Starling Terry testified that, on the 1st of January, 1906, while they were going along the road together, Rogers told them he had bought in Burt's place and had given him two years in which to redeem it, if he got able, and if Mr. Burt and his wife would give him a deed to the land Burt could have the stock. Rogers denies this conversation; but, even if it occurred, it would seem also to support the theory of Rogers in respect to the deed's being made on the consideration of the extinguishment of the debt and the release of the cattle. Burt, it will be remembered, denied that anything was said about a deed until after Rogers had returned from Cruise & Splawn's place, and according to the evidence of the Terrys the conversation with Rogers took place in the afternoon of the day on which the debt was paid off and while Rogers was returning home, and thus by their evidence a case is presented for complainant which had not occurred to the complainant at the time the conversation is said to have taken place.

The rule in respect to verbal admissions or declarations of a party in interest is that they should be received with great caution, "and that the value of evidence of them depends greatly upon its consistency with other evidence not subject to its infirmities. When there is no reason to apprehend fabrication, there is such danger of mistake or imperfection in the repetition of the mere oral statements of another, so much of uncertainty as to the clearness with which his meaning was expressed, or whether he was understood by the witness as he intended to be understood, that in its own nature the evidence is unsatisfactory." And, as was well said in

*Reeves v. Abercrombie, supras*. "Loose declarations of trust and casual conversations derogatory of the grantee's title have not been regarded as possessing much probative force in cases like this, even when proven to have been made, while the unsatisfactory and unreliable character of evidence of verbal statements, easy to be misunderstood and difficult to be accurately reproduced, is everywhere recognized by those accustomed to deciding controverted questions of fact, particularly when given long after the event and without motive to impress the conversation upon the memory."—*Lehman Bros. v. McQueen,* 65 Ala. 570, 573; *Reeves v. Abercrombie,* 108 Ala. 533, 544, 19 South. 41; *Brantley v. West,* 27 Ala. 542, 533.

Now, in respect to evidence corroborative of the respondent's. He testified that, after he had taken up the note and mortgage, he first saw Burt at the house of his (respondent's) daughter, Mrs. Crocker; that he told Burt he had had the note and mortgage transferred to himself, and showed them to Burt, and had his daughter to read them to him; that he told Burt he was ready to have the deed made at any time, and told Burt he would turn his papers and cattle over to him when he made him the deed; and that Burt said "he would make me a deed." Mrs. Crocker testified that Burt, in the conversation with Rogers at her house, told him that he would make him a deed to the land if he would turn the cattle over to him, and that nothing was said about redeeming the land. Burt testified that all that he remembered of what was said at Mrs. Crock's was that Rogers said, "I have those papers." and that "he named then about me giving him the yearling for his trouble. He said we would get together and fix up everything." Now, it seems to us that there is corroboration of the respondent's evidence in that of Mrs. Crocker, as well

as some contradiction of the complainant's evidence. On the 10th of January, 1906, the testimony shows, the complainant, with Bolling and Stewart, went to respondent for the purpose of making a tender of money for redemption, and respondent declined to recognize any right in complainant to redeem. If, as is contended, the complainant was to have two years within which to redeem the land, perhaps it would not have occurred to the complainant that it was necessary for him to carry with him two witnesses to the offer to redeem, and to commission one of them to approach Rogers on the subject, instead of doing so himself. Furthermore, it was only five or six days after the deed had been made that the offer to redeem was made.

We cannot repress the faint suggestion of concert of action after consultation that arises from this phase of the evidence. The witnesses vary in their estimates of the value of the land, from $200 to $400. The consideration recited in the deed is $150. While in cases of this sort disparity in value may be looked to, it will not be allowed to control, irrespective of the other facts and circumstances. Furthermore, the bill does not ask for relief on the ground of inadequacy of consideration; and the proof fails to show any oppression or unfair advantage, or that the consideration was so inadequate as to "shock the conscience"—so grossly disproportionate as to force the conviction that the transaction was not fair and bona fide.—*Perdue v. Bell,* 83 Ala. 396, 400, 3 South. 698; *Douglass v. Moody,* 80 Ala. 69; *Vincent v. Walker,* 86 Ala. 333, 336, 5 South. 465; *Peagler v. Stabler,* 91 Ala. 308, 9 South. 157; *Adams v. Pilcher,* 92 Ala. 474, 477, 8 South. 757; *Martin v. Martin,* 123 Ala. 191, 195, 26 South. 525.

As to the possession of the premises, the complainant testified that he nailed the house up in January, 1906.

He did not remain in possession. He further testifie
that he did not put respondent in possession. So
may infer that neither party was in actual posse'
and the deed drew the constructive possession
respondent.

Conceding that the parties stand on an equal footing
as to interest, and according to all the witnesses truth-
fulness and honesty of purpose, the conclusion most
favoroble to complainant is that he regarded the trans-
action as a mortgage, while the resondent regarded it
as an absolute sale. "We have said the concurring in-
tention of both the parties determine the character of
the transaction, and, when ascertained, must prevail.
It is not the intention of the one, dissociated from the
intention of the other, which is to be ascertained. The
mutual assent of the parties is essential to the com-
pletion of a contract. The ascertainment of different
intentions and different understandings does not make
a case in which equity will construe the transaction to
be a mortgage."—*Douglass v. Moody,* 80 Ala. 61.
Moreover, the testimony of the complainant himself
does not support the theory that it was not the inten-
tion to execute a deed, or that he did not fully under-
stand the effect of the conveyance. The gravamen of
his testimony is that he was to be allowed two years in
which to redeem the property.—*Peagler v. Stabler,* 91
Ala. 308, 310, 9 South. 157.

Upon the whole case, the court is of the opinion that
the presumption, arising from the instrument, that it is
what it purports on its face to be, has not been over-
come. The decree of the chancellor is reversed, and a
decree will be here rendered dismissing the bill.

Reversed and rendered.

TYSON, C. J., and DOWDELL and SIMPSON, JJ., con-
cur.