179 So. 234

**LINDSEY et al. v. HAMLET et al.**

**5 Div. 265.**

Supreme Court of Alabama.

Feb. 17, 1938.

J. Sanford Mullins and Richard H. Cocke, both of Alexander City, for appellants.

Sam W. Oliver and Albert Hooton, both of Dadeville, for appellee.

336

FOSTER, Justice.

This is a bill in equity filed by J. C. Lindsey and his wife, Mrs. Dalton Lindsey, against T. J. Hamlet, the father of Mrs. Lindsey, and seeks to have a deed which they executed to him declared to be a mortgage, and that they be allowed to redeem the land in an exercise of the equity of redemption.

There was an appeal to this court from a ruling on demurrer to the bill, and its equity sustained on well-known principles. Lindsey v. Hamlet, 233 Ala. 362, 171 So. 629.

The suit was then heard on the facts, and the court found that there was no mutual agreement expressed or implied that the deed should operate as a mortgage, and therefore denied relief and dismissed the bill. This appeal is from that decree.

The only witnesses to the transaction between Lindsey and Hamlet who testified were those two men. Mrs. Lindsey testified to a declaration made by her father in that connection that night at her home. There was a mortgage on the land to the Federal Land Bank in the principal sum of $2,400, and it was in default in the sum of $439.25, with costs of foreclosure, and the land was advertised to be sold in foreclosure, and the date of sale had arrived—December 15, 1931. Lindsey induced the attorney to delay the sale until he could arrive with Hamlet. He, on that day, went to Hamlet's home and they then went to see the attorney, whereupon Hamlet paid the amount in default, and stopped the sale, and on the next day Lindsey and wife made a deed to Hamlet, as they had agreed. Thereafter for the years 1932, 1933, 1934, 1935, J. O. Lindsey rented the land from Hamlet and paid him a part, but not all, of the amount stipulated as rent. For the years 1932, 1933, 1934, 1935, before this bill was filed in January 1936, and for 1936, Hamlet paid the taxes on the land and had it assessed to him. There was a dispute about who paid the taxes for 1931. He made payments each year of the annual installment to the Federal Land Bank; and built a house at a cost of $400, and made repairs and improvements in addition to the house at a cost of $400 to $500.

At the time of the execution of the deed, the land was worth approximately the amount of the land bank mortgage, including the amount then paid by Hamlet, but no more.

There was a dispute as to the agreement between Lindsey and Hamlet, and their conversation leading to the execution of the deed and payment of the money. Lindsey was a man of fair education and business experience, and forty-three years old. Hamlet was sixty-nine, a farmer and small merchant. Lindsey testified that he applied to Hamlet on that day for a loan of $439.25 to pay the bank and stop the foreclosure, and Hamlet agreed to lend him the money upon the execution of a deed, with the agreement that the land could be redeemed by them on payment of the sum so advanced. That the rent he paid was agreed to be used to pay the land bank's installments, taxes, and insurance. That "the agreement here designated as Exhibit 'A', dated the 16th of December, 1931, is the agreement entered into by and between me and Mr. Hamlet, the respondent, at Col. Hooton's office." That Mr. Hooton drew it and mailed it to him the next day. That this instrument was discussed in the presence of Mr. Hamlet. Mr. Hamlet never signed it, and it was never shown him, nor request made that he sign it.

The draft of the agreement (not signed) contains this clause: "It is therefore agreed and understood between the parties hereto that the said J. O. Lindsey shall have the right and privilege of redeeming the property described by the payment of the said amount of $439.25, with interest thereon from date to the said T. J. Hamlet." By it Lindsey was to retain possession and pay the taxes and insurance; and that when such amounts are repaid in full with interest, the said Hamlet thereby was to deed the land back to J. O. Lindsey. There was no time specified and no obligation by Lindsey to

make the payment stipulated in this writing, nor in any other.

Lindsey did not testify that he agreed to repay the sum at any certain time or ever. The only such agreement is what is implied from the transaction of a loan. A loan is to be repaid. If no time is stipulated, it is presently payable. The writing which Lindsey said embodies the agreement makes no mention of a loan. It only purports to confer a right or privilege, but no duty on Lindsey. He further says, "It was understood we were to make him a conditional deed with the right of redemption to my wife and me," and the agreement was as set forth in that writing, not signed. Hamlet paid the money that day, but the deed was executed on the following day.

Mrs. Lindsey was not a party to the agreement and did not hear what they said in that connection. But she testified that on the night of the same day at her home Hamlet said that all he wanted was his money back, that he had more land than he could see after; that the agreement was mentioned, and he said he was ready to sign it, without mentioning what agreement nor its terms, and she never saw the paper written by Mr. Hooton.

Hamlet testified that there was no loan made, nor intended nor requested; that Lindsey asked him to take up the land bank mortgage by paying the amount in arrears to it of $439.25 to stop foreclosure and save the land, and offered to make a deed subject to the mortgage; that there was no agreement that the deed would be security for the amount so paid; that there was no agreement to execute a defeasance agreement, and none was discussed, and he knew of no such paper until after this suit was begun. He further testified that they did not discuss renting the land for 1932 at first, but they tried to sell the place, with the agreement that, "I (Hamlet) would make a deed, with the understanding that he would pay me the amount I was paying them and the $1,000.00 if he could get that much out of the sale. Afterwards we tried to sell it and one man, Mr. Jim McGhee, went out to see it. Mr. McGhee did not buy it. After this effort to sell the property we agreed about the rent for 1932." He paid part of the rent. Hamlet claimed an additional debt due by Lindsey of about $2,000. Lindsey admitted owing him a large sum, but did not know the exact amount.

The legal principles here applicable have been fully stated, and need no repetition at length. But we will repeat some of them briefly. An absolute deed will not lose its character as a conveyance by an agreement to allow the seller to repurchase at a future day for the same or an advanced price. West v. Hendrix, 28 Ala. 226; Martin v. Martin, 123 Ala. 191, 195, 26 So. 525, and cases there cited.

To be a mortgage, there must be a debt for which the grantee in the deed may maintain an action in assumpsit. Knaus v. Dreher, 84 Ala. 319, 4 So. 287; Smith v. Smith, 153 Ala. 504, 45 So. 168; Stollenwerck v. Marks & Gayle, 188 Ala. 587, 65 So. 1024, Ann.Cas.1917C, 981.

The evidence to the effect that the deed was intended by both parties to be only operative as security for a debt must be clear, consistent, and convincing. Knaus v. Dreher, supra; Rodgers v. Burt, 157 Ala. 91, 47 So. 226; Richardson v. Curlee, 231 Ala. 418, 165 So. 223; Johnson v. Maness, 232 Ala. 411, 168 So. 452.

It is said in Fowler v. Haggins, 209 Ala. 176, 95 So. 816, that an agreement that another has the right to redeem the land indicates or is a circumstance showing that a mortgage exists, but not controlling when there is no debt. Vincent v. Walker, 86 Ala. 333, 5 So. 465.

When the controversy is whether the parties contemplated an unconditional sale or a mortgage, if the fact is denied, the seller must show, by clear and convincing evidence that it was intended by both parties that it should operate as a mortgage. But when the controversy is whether it is a conditional sale, with reservation of the right to repurchase, or is a mortgage, the court leans to the mortgage theory, Douglass v. Moody, 80 Ala. 61, 65; Daniels v. Lowery, 92 Ala. 519, 8 So. 352; Turner v. Wilkinson, 72 Ala. 361, 366, but cannot declare that it is a mortgage unless there was a continuing debt.

There are other important considerations, such as inadequacy of price, and the subsequent conduct of the seller claiming that it is a mortgage: Did he

**338**

act toward the land as owner? Who assessed and paid the taxes? And who made the improvements and repairs? Turner v. Wilkinson, supra.

■ In this transaction there was no note or other obligation given to repay the sum which Hamlet paid the land bank. They disagreed whether there was an application made for a loan; or that the writing, not signed, was the substance of their agreement. There was no disparity between the value of the property and the consideration; since there was an outstanding mortgage on the land. While the seller remained in possession, it is clear that he rented the land each year from Hamlet, though he failed to pay all the rents. He did not keep the taxes paid; they were assessed to and paid by Hamlet. He did not pay the insurance premiums, required by the bank; Hamlet did this. The house burned, and the insurance was paid on the mortgage, but Hamlet, at his own expense, built another which cost him $400; this Lindsey has not repaid nor offered to do so. Hamlet expended about that much on repairs, which Lindsey has not offered to repay.

On the other hand, it seems evident that soon after Hamlet purchased the land he had it in mind, and it was his purpose to credit Lindsey on his other debt such amount as they could get in excess of what he was then paying, if they could sell it for such an advance. But this idea was abandoned when they could not sell it promptly. Hamlet has kept up the payments to the land bank.

■ The vital questions depend upon the testimony of Lindsey on one side and Hamlet on the other. Most of the circumstances support Hamlet. Upon his theory there was no agreement either to resell to Lindsey or to make a loan to him. It was not a controversy as between those two ideas. But he contended that it was a straight sale. Therefore the burden was on complainant to make out his case by clear, consistent, and convincing evidence, with the presumptions leaning against him.

We agree with the trial judge that he has not done so. The decree is therefore affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.