RAYMOND G. NATHAN, Associate Judge.
In this action both parties to this appeal sought to quiet title to a section of land in Dade County. This appeal is from a summary final decree in favor of the appel-lee, Nicholas Di Costanzo, plaintiff below.
The material facts are undisputed. Appellant, Nissim Hadjes, Inc., and appellee claim their titles from a common source. The appellee deraigns his claim of title through a warranty deed, absolute in form, from the Richards Land Development Corporation to Nicholas Di Costanzo, as trustee, recorded May 28, 1958, and a quit claim deed from Nicholas Di Costanzo, as trus *604 tee, to Nicholas D. Costanzo (plaintiff), recorded July 12, 1965.
Appellant deraigns its claim of title under a warranty deed directly from Richards Land Development Corporation to appellant, recorded September 29, 1958.
Contemporaneously with receipt of his trust deed, which purportedly conveyed six sections of land (including the section in controversy) Di Costanzo executed a declaration of trust whereby the Casino De Capri, a Cuban corporation, was named the beneficiary. The trust declaration did not recite any purpose for its execution nor was there any evidence it was recorded.
In his deposition, Di Costanzo, in substance, testified that immediately prior to the receipt' of his trust deed one Berko-witz, president of the grantor, Richards Land Development Corporation, personally owed a balance of $55,000 on a pre-existing debt to the Casino De Capri, beneficiary, under the trust declaration. Di Costanzo further testified he personally paid $5,000 of Berkowitz’s Casino debt, but his testimony (and the record) is not clear as to whether said $5,000 payment was made prior to or subsequent to the trust deed conveyance to Di Costanzo.
In connection with the acquisition of his trust deed, Di Costanzo in his deposition in response to the following questions answered :
• “A. Well, this man, Berkowitz at the time I was President at the Casino De Capri and this Berkowitz used up quite a large sum of the casino’s money, once the time come to produce the money and he just produced a part of it. * * *
“So finally I seen that he had ran out of his resources because he put a second mortgage on his house * * * (s)o in order to make it come to a closing, I said, ‘All right,’ I says, T will O.K. the five thousand for you through the office,’ which later on I paid at the cashiers in the casino, and now he owed fifty thousand more * * *
“I said, ‘Now you mortgaged your houser * * *. How are you going to pay this-money? You got all the sections of land.', you tried to sell me one time.’ I says, ‘Yom better put up security, you know, you might, drop dead.’
«* * *
“ * * *
“So he gave me, it is about six sections-of land, for security * * *
“Q. Yes.
“A. So as he raised the money, I had: to release some of the land because he was-making contracts, selling back and forth,. so I had to release some of those in order to deliver the deeds and so he could pay off this fifty.
“So now I said, ‘What are you going to< do with my five, because you paid the casino and you forgot my five which I O.K.’d/
“He said, ‘Well, I got a section, I’ll give it to you, that will break us about even SO' you are satisfied.’
“I says, ‘Well, I am and I ain’t, but you better give it to me. In the event you are not able to raise the money, at least I got something.’ ”
The record conclusively shows that Berkowitz’s debt to the casino was fully paid and Di Costanzo, as trustee reconvey-ed to Richards Land Development Corporation five of the six sections included in his original trust deed. Two of said sections were reconveyed October 19, 1958, and three sections were reconveyed December 10, 1958.
The record further shows that Berko-witz died before he paid his personal debt of $5,000 he owed to Di Costanzo. The date of Berkowitz’s death is not established. Di Costanzo further testified that Berkowitz had died and could not repay his $5,000 debt so conveyance of the section of land in controversy was then made by himself, as trustee, to himself individually on *605 July 9, 1965 to take care of the debt Berko-witz owed him.
Di Costanzo’s deposition in connection with the 1965 conveyance to himself contains the following questions and his response :
“Q. Do you know what the reason was for signing a deed to yourself?
“A. Well, I was trustee. Now when he agreed to give me the section for the $5,000 I had paid the Casino for, so naturally now I got to give myself a deed. So, as trustee it is questionable, but when it is conveyed to me now, it is mine.
“Q. I see. Anyway, he was dead and you didn’t have any chance of getting the $5,000 out of him, so you just deeded it to yourself, is that what you mean?
“A. He was dead, there was no doubt he couldn’t pay me.
“Q. Is that the reason you transferred it to yourself ?
“A. Evidently it must be.”
The record also discloses that the appel-lee and the appellee’s immediate predecessor in title, Nicholas Di Costanzo, Trustee, paid all the taxes due on the land in controversy from the time the trust deed was acquired to the time of the filing of this action below. There is however, no claim of possession by either of the parties to this appeal.
Appellant contends that 1) the original conveyance from Richards Land Development Corporation to Di Costanzo, as trustee, constitutes a mortgage under 697.01 F. S.A. and 2) was invalid as such since said conveyance was given as security for Berkowitz’s personal debt. On the basis of the record the latter contention is without merit, so we shall deal only with appellant’s first contention.
F.S. Section 697.01 F.S.A. provides:
“All conveyances * * * or other instruments * * * conveying * * * property, either real or personal, for the purpose or with the intention of securing the payment of money, whether such instrument be from the debtor to the creditor or from the debtor to some third person in trust for the creditor, shall be deemed and held mortgages, and shall be subject to the same rules of foreclosure and to the same regulations, restraints and forms as are prescribed in relation to mortgages. Provided, however, that no such conveyance shall be deemed or held to be a mortgage, as against a bona fide purchaser or mortgagee, for value without notice, holding under the grantee.”
Regarding the construction and application of the above-quoted statute, it is stated in 22 Fla.Jur., Mortgages, section 94, pp. 215-17:
“Courts of equity are guided more by the substance than by the form of the transaction in ascertaining whether an instrument is a mortgage. Also, under the controlling statute, neither form nor superficial declaration of intention will be allowed to successfully obscure the true nature of the transaction. The stat ute is regarded as having been designed to insure effectuatipn of the genuine intention and purpose of the parties by subordinating thereto the ostensible form in which transaction is finally couched.”
“Accordingly, the fact that an instrument is in form a deed absolute does not preclude the interpretation thereof as a mortgage. In deciding the question of whether a deed is, in fact, a mortgage, the Court may take into consideration the paper itself, or the instrument in connection with contemporaneous writings or agreements concerning the subject matter, or by the aid of extraneous evidence that will determine the decision of the question. The attitude of the parties relative to the conveyance after its execution may also be considered. In case *606 of doubt the instrument should be construed to be a mortgage.”
Appropriately, it is also stated in part of section 95, p. 217, Fla.Jur., supra:
“The fact that an instrument is designated as a deed of trust, or a trust deed, is not conclusive in regard to the construction of the character thereof as a mortgage or otherwise. A trust agreement and a deed absolute in form may be •construed together as constituting a mortgage, or as security for advances made and to be made. The question is whether the conveyance to a trustee is to provide for the discharge of the obligation of the grantor to the cestui que trust. If executed to secure debts owed by the obligor, not for the purpose of selling property, the trust deed will be deemed to be in the nature of a mortgage.”. -
The fact that appellee paid the taxes from the acquisition date of the trust deed to the time of filing of this action is consonant with his view that a conveyance rather than a mortgage was intended. Chinn v. Llangollen Stable (C.C.A.6th) 109 F..2d 66 (1940); Lindsley v. Hamlet, 235 Ala. 335, 179 So. 234 (1938).
Considering the entire transaction in light of the record and all the applicable principles, we are constrained to -hold that the trust deed from Richards Land Development Corporation to Di Costanzo was, in fact, a mortgage. Neither party to this .appeal has contended that a valid trust was intended.
Moreover, we conclude that a mortgage was intended notwithstanding 689.07 F.S.A. appears to provide to the contrary. In Arundel Debenture Corporation v. Le Blond, 139 Fla. 668, 190 So. 765, 767 (1939), the Florida Supreme Court said;
“While it is true that by virtue of section 5666, Compiled General Laws of Florida 1927 [subsequently renumbered 689.07 F.S.] * * *, the conveyances under which Schultz acquired the property involved, vested in him a fee simple title, with full power and authority to sell, convey and grant both the legal and beneficial interest in the real estate, Willys-Overland, Inc. v. Blake et al., 97 Fla. 626, 121 So. 884; it is likewise true that such a conveyance will not preclude a Court of Equity from declaring this to be a resulting trust, unless there be prior equities that will prevent such being done.
“The strict construction sought by defendant to be placed upon section 5666, Compiled General Laws of Florida 1927 * * *, was never intended in the Willys-Overland case supra. This section * * * was intended to prevent secret trusts, to convey the beneficial title to the grantee along with the legal title, in order to prevent any fraud being perpetrated upon all who might subsequently rely upon the record when dealing with the grantee.”
Though 689.07 F.S.A. was amended in 1959, it does not appear that the aforementioned intention as interpreted by our Supreme Court in Arundel in 1939 has been modified by said amendment. So by analogy to the reasoning in Arundel, supra, and the principles of law heretofore stated we must arrive at the conclusion that a Court of Equity is not precluded from declaring the conveyance to Di Costanzo, as trustee, ostensibly within the ambit of 689.07 F.S. A., a mortgage. Obviously, Di Costanzo was not a purchaser without notice of the true nature of the transaction sub-judice.
The parties, each claiming title from a common source, were required to show a better title from that source to prevail. McDaniel v. McElvy, 91 Fla. 770, 108 So. 820, 51 A.L.R. 731 (1926). See also the annotations in 5 A.L.R.3rd 375. Each only needed to trace his title to the common source and not prior thereto. Dayton v. Patton, 80 Fla. 763, 86 So. 702 (1920); Laganke v. Sutter, 137 Fla. 71, 187 *607 So. 586 (1939). The mere fact that both parties claim under a common source did not dispense with the requirement that ap-pellee establish that he acquired title from the common source. Holliday v. Guill, 196 Ga. 723, 27 S.E.2d 398 (1943)
Accordingly appellant is entitled to have its title to the land in controversy quieted subject to any interest, if any, ap-pellee acquired in the mortgage held by the Casino De Capri, as mortgagee. Appellee is also entitled to reimbursement for all taxes paid by him.
We specifically refrain from determining whether the Casino’s mortgage might have been legally satisfied and discharged.
Reversed.