## Back v. Back's Adm'r.

Jan. 12, 1940.

Hawk & Lewis for appellant.

B. W. Hale and Harry L. Moore for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

J. P. Back, prior to his death in May, 1933, on January 14, 1926, conveyed by various deeds his real estate to his children, seven in number. Appellant in the division was deeded the "home place," the grantor reserving the right of occupancy and use of the residence, garden and outbuildings until his death. Appellant's deed was unrecorded.

A year after the conveyances, J. P. Back made distribution of cash among his children, not in equal proportions. He gave to each, save appellant, the sum of $1,000. He gave to him $3,000, as appellant insists to pay on a farm which he had bought in Pulaski County.

About October 1933 appellant instituted action against the other heirs and the widow, in which he set up the facts detailed, and asserted that he had not had his deed recorded, but left it at the father's home, later discovering that some one had so mutilated the document that it was not then a recordable instrument. This deed, exhibited, shows that the names of grantors and grantee had been marked out, and the names of grantors and certificate of acknowledgment entirely removed. Claiming that the other heirs agreed to the distribution and had accepted the several deeds, he asked that they be required to convey to him the land originally conveyed by the father.

Certain of the heirs in answer admitted the distribution of the property as alleged, but claimed that notwithstanding the delivery of the deed to appellant, with its reservations, he took possession of the whole tract and occupied it for some time; that in January 1927 he, in consideration of the payment to him of the $3,000 by the father, sold him the tract of land, the transfer being effected by the agreed mutilation of the former deed, the idea being that this would save expenses and reinvest the father with title.

The son surrendered possession and bought the Pulaski farm, paying on the purchase price the $3,000, obtained from the father. The father then moved back to the home tract, and took and held possession until his death in 1933. During the interim the son made no claim to the land. Upon this plea the other heirs claimed that S. O. Back was estopped to set up any claim to the land, or to demand of them a deed therefor, and that since the tract had been resold to the father, it descended to the heirs at his death. However, they say that if the court should hold that S. O. Back is entitled to compel conveyance, they should recover the $3,000 and the property be sold to satisfy lien.

S. O. Back asserted that the $3,000 was given to him to make initial payment on the Pulaski County farm, it being verbally agreed between him and the father that if at any time the father should be in need of funds for his support and request a reconveyance of the land, he would execute a deed to him, but if such contingency did not arise, then the $3,000 should be considered as a gift, and the legal title to the land should remain in him.

He contended that since the agreement to reconvey was not in writing, it was unenforceable under Section 470, Kentucky Statutes, and also plead limitation, because more than five years had elapsed between the date of the alleged gift and the death of the father. By agreement, the answer of the heirs who had responded was adopted by other heirs who had not theretofore plead.

After proof the case was submitted, and the court held that the plaintiff was entitled to the relief sought, and directed the master commissioner to prepare and deliver a deed conveying title to the plaintiff, which we gather from briefs, was done. The counterclaim of the heirs asking judgment for $3,000, with lien, was dismissed. The court further wrote:

"The court makes no finding of fact as to whether or not the plaintiff's original deed * * * was mutilated with or without his consent, or whether or not his father attempted to buy the land back * * * and paid him $3,000 therefor, or whether the $3,000 was or not a gift to S. O. Back. The court is of the opinion that when the original deed was delivered to plaintiff, the title vested in him, and redelivery to the deed was insufficient to invest the father with title, and that under either theory of the case, * * * the plaintiff is entitled to the relief sought. The court is of the opinion that though the theory of defendants be correct, and the plaintiff undertook to sell the land back to the father, with the understanding that the father would destroy the deed, these defendants are not entitled to recover the $3,000, but if collected from him would have to be done by the personal representative of J. C. Back. For these reasons the court declines to pass upon the questions of fact, except insofar as may be necessary to the determination of the present action."

The defendants objected and excepted and were granted an appeal, but apparently no appeal was prosecuted.

On January 31, 1935, S. J. Hale filed his petition in equity, in which he recites that (at some undisclosed date) he qualified as administrator of J. P. Back's estate. The party defendant was S. O. Back, who was plaintiff in the suit which has been digested above. The administrator by his action sought to recover the $3,000 from S. O. Back, on the ground that the father had paid the son that sum for the land; at the same time alleging that the court had ordered a deed on behalf of the heirs, conveying title to S. O. Back. He asserts "that by reason of the payment of the $3,000 to the son for the tract of land, the defendant is now indebted to the estate," and a lien was sought to secure its payment.

S. O. Back filed answer, in the first paragraph of which he denies the allegations of the petition, except he admits that J. P. Back did use and occupy the land up till the time of his death, but saying this was under the reservation in the deed from father to son. He further pleads substantially, the technical defenses contained in his first petition, and in addition set up a right of homestead in case the court should be of the opinion that he is indebted to the estate.

The administrator demurred to each paragraph of the answer, and the court sustained the demurrer to paragraph 3 (Statute of Frauds) and overruled it as to others, (2) the merits of defense (gift), (4) limitations, (5) homestead exemption. The plaintiff replied, denying so much of paragraph 2 of the answer as alleged the gift of $3,000 for the purpose of paying on the Pulaski County farm. He then denied paragraphs 4 and 5, without affirmatively pleading.

Proof was taken by deposition, and after preparation, the court ordered the record in the case above digested, to be made a part of the record in the instant case, "for evidence so far as competent and relevant." The court thereupon adjudged that the administrator should recover of S. O. Back the sum of $3,000 with interest from January 3, 1935, with lien on the land, directing its sale, and continued the case for such further orders as might appear necessary. Plaintiff excepted and was granted appeal.

Appellant contends, (a) that the court erroneously overruled his general demurrer to the petition; (b) his demurrer to paragraph 3 of the answer (Statute of Frauds); (c) that his plea of limitations was good in bar; (d) the court erred in refusing to allow appellant the homestead, and finally that the evidence did not support the chancellor's finding.

The contention that the court was in error in overruling the demurrer to the petition was based on the argument that the petition did not allege that $3,000, said to have been paid by the father for the land, had not been repaid to the father during his lifetime, nor that J. P. Back ever demanded of the son a deed for the land, or the repayment of the money.

The petition sufficiently alleged the payment of the $3,000 to the son by the father, under the impression that the surrender of the deed was all that was necessary to reinvest title in the old man. It was not incumbent on the father to demand a deed, or to demand repayment, as he had the land in his possession, and evidently had the deed, which he believed gave him title. There could have been no demand, either for deed or repayment, since appellant set up his claim to title to the land only after the death of his father. The suit by the administrator was the first and only claim made, and

this was brought about by the court's decision in the first suit by appellant.

This last suit after all, was based somewhat on an action for money had and received, and the demand came in the way of suit by the personal representative. In no sense of the word was this last suit based on an action for damages for breach of contract; that is the breach of an oral contract to reconvey the land to the father. This was out of the way in the first suit.

We have read the case relied upon by appellants, Wright v. Yates, 140 Ky. 283, 130 S. W. 1111, 1112, and note that the suit there was one for a cancellation of several intervening deeds, and the demurrer to the petition was sustained on the sole ground of a failure to allege, not a demand, but a repayment of the purchase money. The case is easily distinguished on the point argued.

It is argued that the court erred in adjudging a lien on the land to secure the repayment of the $3,000, the contention being that since the alleged contract to convey was in parol, it was a void contract, and the payment of the purchase price did not create a lien on the land. An answer to this proposition is contained in the case of Wright v. Yates, supra, cited by appellant. In this case the court taking the position that the oral contract for the sale of the land might not be enforced, Section 470, Kentucky Statutes, nevertheless said:

"Nor does it matter that the vendee knew of the void contract between his vendor and another with respect to the land. It is true that, although the contract of sale was void, the vendee in the parol sale had the right to recover the purchase money paid from his vendor, as for money had and received. Equity would not require him to surrender possession until the purchase money was repaid to him, and he was entitled to a lien upon the land until he was reimbursed."

Here, while it is argued that the father was in possession only under his reservation clause in the deed, appellant pleads and testifies that the father was in possession at all times, and had always paid taxes on the whole tract.

As bearing on the principle that a parol purchaser in possession has a lien upon the property to reimburse him for the purchase price paid, where the agreement

fails, we may refer to Elliott v. Walker, 145 Ky. 71, 140 S. W. 51; Grainger v. Jenkins, 156 Ky. 257, 160 S. W. 926, L. R. A. 1915E, 404; Grace v. Gholson, 159 Ky. 359, 167 S. W. 420.

We have frequently written that in addition to the establishment of a lien by a written contract which shows an intention to charge some particular property with a debt or an obligation, there is a thoroughly well-established principle which, if the facts warranting it exist, creates a charge known as an equitable lien. This is where a court of equity out of a general consideration of right and justice as applied to the relations of the parties, and the circumstances of their dealings in the particular case, creates a situation which in good conscience warrants the declaration of a lien. 17 R. C. L. 605; Ringo v. McFarland, 232 Ky. 622, 24 S. W. (2d) 265; Owensboro Banking Co. v. Lewis, 269 Ky. 277, 106 S. W. (2d) 1000, and McFerran v. Louisville Title Company's Receiver, 254 Ky. 362, 71 S. W. (2d) 665. In the latter case, in distinguishing between common law and equitable liens, we held the latter not dependent upon possession.

It is further argued that the court overruled the demurrer to so much of defendant's answer as plead limitation, and that he was in error in so doing. This plea as we observe it is based on the facts above set out. Appellant cites solely in support of his contention the five year statute of limitations, Section 2515, Kentucky Statutes, as a bar, without pointing out any authority which would fortify his claim.

The action here was not based on the right of the administrator to recover the $3,000, which the son alleged the father had given him, nor on any claim or effort on the part of the personal representative to rescind or demand execution of an implied or oral contract. The whole claim was based on the proven assertion that the father had repurchased from the son the tract of land, and paid him $3,000, when as a matter of fact, as later decided, the son had never reinvested the father with title, though it seems clear the father lived and died believing the latter situation to be the true one.

One of the conditions upon which appellant based his plea was that there had been no demand for execution of a deed. We have held that the statute does not operate against the right to recover the purchase money,

until the vendor refuses to execute the conveyance. As long as there was no demand there could be no refusal, and in this case the heirs, through the personal representative, chose to sue for the alleged paid purchase price rather than for reconveyance. Elliott v. Walker, 145 Ky. 71, 140 S. W. 51. The right of the administrator to sue on behalf of the estate did not arise until the appellant developed the rather peculiar situation shown by his action to have existed.

As noted supra, the court by its judgment held that the administrator was entitled to recover the alleged price of the land, adjudged a lien and directed a sale, but retained the case on the docket for such further orders as might later appear necessary. It is apparent that the court did not pass on the claim of appellant as to homestead, in case he should be compelled to pay the purchase price. The court having thus reserved this question, we likewise reserve and pass it without comment.

Finally it is contended that the proof was insufficient to support the finding of the chancellor. We have no difficulty after reading the proof in both cases, that the great weight of competent evidence was to the effect that the father paid the son the $3,000 for the land in question. We could only reverse judgment on this ground, where evidence is conflicting, if we entertained more than a doubt as to its correctness. It is unnecessary to rule on the question of admitted incompetent evidence. Should we do so the appellant would be left with little testimony on the whole issue and less on his contention that the amount recovered was a gift.

Judgment affirmed.