## BEST v. JENKINS.

Court of Appeals of Kentucky.
June 19, 1953.

Rehearing Denied Oct. 9, 1953.

Hottell, Stephenson & Allen, Louisville, for appellant.

H. S. Keeling, Elmer Morgan, Louisville, for appellee.

COMBS, Justice.

The appellant, Arthur E. Best, seeks to recover $4,000 advanced by him to Mrs. Jenkins, the appellee, in August, 1950. The judgment is in favor of Mrs. Jenkins.

At the time he advanced the money, Mr. Best was a widower, 71 years old. He had not worked for some five years on account of ill health. Since the death of his wife some 18 months earlier, he had lived in boarding houses. He had a life savings of around $5,000.

Mrs. Jenkins is in her middle forties. She is a stepdaughter of Mr. Best's deceased brother and she and Best were close friends. At the time she accepted the

$4,000 she had recently been divorced from her husband, was out of work, and in need of medical attention. She owned a five-room house where she lived with her daughter, her mother, and a forty-year-old cousin whom her mother had reared. Mr. Best had lived in Mrs. Jenkins' home for two short periods in the spring of 1950. He nourished the hope of making his home there permanently and admits this was a major factor in his decision to assist Mrs. Jenkins financially. He "kind of figured" she would permit him to live in her home and thought this would be a means by which she could repay the loan.

Mrs. Jenkins needed money. Her home was under mortgage for $2,700. The house was in need of repairs and, as noted, she needed medical attention. Several times during the summer of 1950 Best offered to help her financially. Finally in August she accepted his offer. He withdrew $5,000 which he had on deposit in a building and loan association, retained $1,000 for himself, and delivered the balance to Mrs. Jenkins. As we construe the testimony, there was no agreement as to repayment of the principal. The parties did agree that Mrs. Jenkins would pay to Best $75 every six months. This was the amount of interest Best had received from his savings account.

With the $4,000 Mrs. Jenkins paid the $2,700 mortgage on her home, made some repairs on the house, bought some appliances and furnishings for the house, and paid for a tonsillectomy for herself.

The trial court found the arrangement between the parties to be in the nature of a contract whereby Best advanced the $4,000 in consideration of Mrs. Jenkins' promise to repay this amount at the rate of $75 every six months. The court found that the parties intended that Mrs. Jenkins would pay interest on the loan at the rate of 3%, which would amount to $120 per year, and that the balance of the yearly payments, of $30 per year, would be considered as a credit on the principal. The court found that the advance of the money was not an outright gift since there was an obligation to pay interest and expectation of repayment of the principal. We agree with that finding. But the troublesome question is whether this was an advance of money to be repaid as an annuity, as found by the trial court, or a loan without any agreement as to repayment.

■ There is little dispute about the facts. The case turns on the legal effect of what the parties did. Neither of them testified that the semi-annual payments of $75 were intended or understood to be a repayment of the principal. They merely agreed on payments in this amount because that was the amount Best had been receiving from the building and loan association. We are of the opinion, from our appraisal of the testimony, that the $75 payments were considered by the parties as nothing more than interest on the loan. It is true that this amounted to 3¾% interest and that Best had been receiving only 3%. On the other hand, this was a lower rate than Mrs. Jenkins could expect to obtain from a bank. Moreover, it is extremely difficult for us to believe that this old man would have parted with a major portion of his life savings, without making any provision for his support, under an arrangement by which the principal would not be repaid until long after expiration of his life expectancy. We conclude the money was advanced as a loan with the understanding Mrs. Jenkins would pay $75 as interest every six months, and that the parties had no arrangement in regard to payment of the principal. Although Mr. Best had an undisclosed motive in advancing the money, that is, to place Mrs. Jenkins under obligation to him in the hope that he might live in her home, this undisclosed motive does not keep this transaction from being a loan for which Best can demand payment.

■ When no time for repayment of a loan is stipulated, the law implies that it is to be repaid at the option of the lender. 54 C.J.S., Loan, page 657; Lindsey v. Hamlet, 235 Ala. 335, 179 So. 234; 7 Am.Jur., Bills & Notes, sec. 145, page 870. It follows that this loan was payable at the option of Mr. Best and judgment should have been entered for him in the amount of the loan.

We agree with the trial court's finding that Best is not entitled to an equitable lien upon Mrs. Jenkins' home. Equitable liens are of two kinds: those that arise from a contract which shows an intention to charge property with a debt or obligation, and those which are implied by a court of equity out of general considerations of right and justice. McFerran v. Louisville Title Company's Receiver, 254 Ky. 362, 71 S.W.2d 655; Back v. Back's Adm'r, 281 Ky. 282, 135 S.W.2d 911; Gabbard v. Watkins, 280 Ky. 257, 133 S.W.2d 54; Owensboro Banking Co. v. Lewis, 269 Ky. 277, 106 S.W.2d 1000.

In this case, there was no agreement or understanding that Best would have a lien on Mrs. Jenkins' property. There was no agreement between the parties as to the disposition she would make of the money. It is clear that Best intended for Mrs. Jenkins to use the money for any purpose she desired. There is no evidence of fraud or duress, and no facts which would justify a court of equity in implying a lien on general equitable principles.

The judgment is affirmed in part and reversed in part, with directions for the entry of one consistent with this opinion.