**In re D & B ELECTRIC, INC., Debtor.**

**Bankruptcy No. 77-02127-L.**

United States Bankruptcy Court,
W. D. Kentucky.

May 14, 1980.

J. Paul Keith, III, Louisville, Ky., for bankrupt corporation.

Robert G. Stallings, Louisville, Ky., for petitioner, Rueff Lighting Co.

John W. Ames, Louisville, Ky., for bankruptcy trustee.

MEMORANDUM AND ORDER

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

A question of priority of liens is presented. The issue, between Rueff Lighting Company and the trustee in bankruptcy, is which of those parties holds a superior lien upon uncashed checks which were made jointly payable to Rueff and the bankrupt, D & B Electric, Inc. The checks, in the

total amount of $5,494.97, were issued in consideration of Rueff's purported forbearance from exercising its right to file a statutory lien.

Prior to filing bankruptcy, D & B Electric, Inc. was an electrical subcontractor on two different publicly funded construction projects. Lurding Construction Company was the general contractor for one of the projects, known as the Henry County Library job. The general contractor for the other project, the Whitney Young Job Corps Center, was the G. E. Wilson Construction Company, Inc. Rueff Lighting Company supplied lighting fixtures for these projects to D & B Electric beginning in October of 1976.

In February of 1977, D & B fell into arrears in its accounts with Rueff, and the following month Rueff ceased delivery of any additional materials due to D & B's delinquency.

Aside from its normal collection powers, Rueff had the authority to file, and thereby perfect, a lien against all materials furnished for the construction projects.

Rueff's authority to file a lien is vested by a statute which provides that "any person, firm or corporation who . . . furnishes materials or supplies for . . . public improvement . . . shall have a lien thereon".[1]

This statute is temporally limited by another statutory provision, which mandates the dissolution of any materialman's lien unless filed within 30 days of the last day of the month in which any labor, materials or supplies were furnished.[2] Since Rueff last furnished materials in March of 1977, the last day upon which it could perfect its lien by filing was April 30, 1977.

It was not until June 4, 1977, after Rueff's power to perfect its lien had lapsed, that Rueff acted to protect its rights.

On that date, Rueff executed a written agreement with Lurding Construction Company, wherein its right to assert a lien was waived in consideration of its receipt of checks jointly payable to Rueff and D & B Electric, and endorsed by D & B.

On June 14, Rueff executed an identical agreement with G. E. Wilson Construction Company, Inc.

Checks were drawn on the accounts of Lurding and G. E. Wilson on June 2, and June 14, 1977 in the amounts of $3,804.86 and $1,690.11, respectively. The amounts represented payments to Rueff for lighting fixtures furnished for the construction projects.

The checks were held by Rueff and were never endorsed. They were in the hands of Rueff at the time D & B filed bankruptcy in December of 1977, and are now claimed by the trustee. Suffice it to say, Rueff was never paid by D & B and it is now challenging the power of the trustee to gain control of the jointly payable checks.

Rueff's argument is that it, and not the trustee, should hold the superior lien on the checks. It alleges that the lien is essentially equitable, having arisen from its waiver of the once available statutory lien remedy.

The substantive assertion of the trustee is that § 70c of the Bankruptcy Act confers upon him the status of a hypothetical lien creditor, commanding superior right and title to any property or claim not perfected before bankruptcy.

The trustee seeks to invoke this favorable status by arguing alternatively that (1) Rueff has no lien, equitable or otherwise, since the waiver of lien rights that had already passed constituted worthless consideration, and (2) that even if Rueff enjoyed the status of an equitable lienholder, its claim would not be superior to that of the trustee.

Section 70c of the Bankruptcy Act, appropriately designated the "strong-arm" clause, vests broad and forceful powers in the trustee in bankruptcy. The operative portion of this provision as it relates herein states that:

1. Ky.Rev.Stat. § 376.210 (1966).

2. Ky.Rev.Stat. § 376.230 (1978).

The trustee shall have as of the date of bankruptcy the rights and powers of: (1) a creditor who obtained a judgment against the bankrupt upon the date of bankruptcy, whether or not such a creditor exists, (2) a creditor who upon the date of bankruptcy obtained an execution returned unsatisfied against the bankrupt, whether or not such a creditor exists, and (3) a creditor who upon the date of bankruptcy obtained a lien by legal or equitable proceedings upon all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt upon a simple contract could have obtained such a lien, whether or not such a creditor exists.[3]

The effect of this provision is to endow the trustee with the status of a "hypothetical" lien creditor, possessing the full complement of priority powers which normally accompany one's position as an actual lien creditor.

The time at which the trustee acquires the status of hypothetical lien creditor is the date of the bankruptcy. Accordingly, whether or not a creditor's lien is deemed subordinate or superior to that of the trustee turns on whether the creditor's lien is perfected when the bankruptcy petition is filed.[4] Other provisions of the Act notwithstanding, a trustee asserting § 70c strong-arm powers will generally be subordinate to the creditor holding a perfected lien at the time of bankruptcy.

The Bankruptcy Act itself offers no substantive definition of what constitutes perfection of a lien against property, and what priorities thereto attach. For such determination, reference must be made to the substantive law of the state in which the Bankruptcy Court sits. As one leading commentator puts it:

"Therefore, the trustee's powers in every case governed by this portion of 70c, are those which the law would allow to a supposed creditor of the bankrupt who had, at the date of the bankruptcy, completed the legal (or equitable) processes for perfection of a lien upon all the property available for the satisfaction of his claim against the bankrupt".[5]

If a trustee's rights are not deemed superior under state law to those of a lien claimant, then the trustee takes the bankrupt's title subject to the creditor's valid legal or equitable lien rights.[6] In this instance, the subordination of the trustee's claim of right under § 70c is sought through recognition and enforcement of a wholly equitable condition. Determination of whether a claimant has an equitable lien or equitable interest is generally made by reference to state law.[7]

In Kentucky, an equitable lien may arise "where a court of equity out of a general consideration of right and justice as applied to the relations of the parties, and the circumstances of their dealings in the particular case, creates a situation which in good conscience warrants the declaration of a lien".[8]

Equity being what it is, the judiciary must fashion its decisions to the particular facts of each case. In this instance, we are left to follow the general guideline quoted above regarding what constitutes an equitable lien, since Kentucky courts have not yet decided whether the precise facts contained herein would warrant creation of that lien. In this case, the facts cannot so warrant.

Rueff asserts that its arrangement with the general contractors to forbear from exercising its statutory rights arose from the most practical exigencies of the construction industry. It is not infrequent practice for a general contractor to pay funds owed

3. 11 U.S.C. § 110(c).

4. 4B *Collier on Bankruptcy* ¶ 70.50 (14th Ed. 1978).

5. Id. ¶ 70.49, at 596.

6. Id. ¶ 70.62.

7. Id., at 691 n. 3.

8. *Back v. Back's Adm'r*, 281 Ky. 282, 135 S.W.2d 911, 914 (1940); see also *Central Contractors Service v. Ohio County Stone Co.*, 255 S.W.2d 17 (Ky.1953).

a subcontractor directly to the supplier of materials. This practice ensures that the supplier is in receipt of prompt payment, and is engaged in for the purpose of avoiding the filing of a materialman's lien. As Rueff indicates, once a lien is filed against a publicly funded construction project, funding immediately stops. Adverse economic consequences quickly follow for all associated with it, and the public purpose of the project is thwarted.

This practice of the construction industry was recognized and respected in the case upon which Rueff places almost sole reliance, *A. L. Mullins v. Noland Company,* 406 F.Supp. 206 (N.D.Ga.1975). That case, however, is inapposite. In *Mullins,* an agreement similar to the one here was entered into between the general contractor and material supplier. Unlike this case, the agreement was made while the supplier's lien was perfectable. Further, the supplier had received and cashed the checks made to its order within four months prior to bankruptcy.

The issue in *Mullins* was not, therefore, whether the trustee had a superior lien by virtue of § 70c. The property had already passed to the hands of the supplier and the transaction was completed. The question was whether the trustee could recover the payments made pursuant to the agreement as voidable preferences under § 60 of the Bankruptcy Act.

The Court in *Mullins* concluded that the supplier's forbearance from perfecting its statutorily prescribed lien right protected the payments it received from attack as a voidable preference. It did not address the issue of whether the supplier's forbearance was sufficient to vest lien rights superior to those acquired by the trustee under § 70c.

The distinction between a § 60 action and a § 70c action is noteworthy. Sec. 60 embodies many more prerequisites to its application than does § 70c.[9] Accordingly, the trustee's burden in affirmatively proving a preferential transfer is considerably greater than defending a challenge to his hypothetical lien.[10]

But whether recovery could be had under § 70c applying the rule adopted in *Mullins* is an issue we need not decide. By any interpretation under state law, Rueff's claim of forbearance cannot assume the status of a lien, either legal or equitable. When a claimant attempts to secure the status and rights of a perfected lienholder through equity, he must have at least incurred some detriment. Restraint in exercising an expired right to assert a lien cannot be afforded the same legal effect as validly exercising that right. Nor can such restraint be treated comparably with forbearance from exercising an unexpired, enforceable right.

In *Mullins* it was never decided whether or not the materialman's action was sufficient to vest in it lien rights, legal or equitable. But in cases factually similar to *Mullins,* courts have held that the supplier's forbearance from perfecting its statutory lien was sufficient to create an equitable lien.[11]

Several federal decisions in this district recognize the validity of equitable liens in various construction industry situations.[12] The equities present in those cases were more compelling than those presented here. If in this case the arrangement had been transacted at a time within which Rueff was eligible to perfect its lien, its claim for an equitable lien would have been much more enticing.

9. *Collier on Bankruptcy,* supra ¶ 70.48, at 590.

10. Id.; *Keenan Pipe & Supply Co. v. Shields,* 241 F.2d 486 (9th Cir. 1956).

11. *Jordan Co. v. Bethlehem Steel Corp.,* 309 F.Supp. 148 (S.D.Ga.1970); *Johnson v. Root Mfg. Co.,* 241 U.S. 160, 36 S.Ct. 520, 60 L.Ed. 934 (1914).

12. *Maryland Casualty Co. v. Lincoln Bank & Trust,* 40 F.Supp. 782 (W.D.Ky.1941), (Surety's right to equitable lien on funds paid by contractor to bank enforceable against bank only if bank had notice of prior, unsatisfied claims against contractor); *In re Turner,* 51 F.Supp. 740 (W.D.Ky.1943), (Assignment of bankrupt contractor to bank of funds receivable from owner created equitable lien in bank's favor).

Our discussion heretofore would lead the reader to believe that the trustee will prevail. That is not to be the case. There is an alternative theory of law, recently and vigorously embraced by the Sixth Circuit Court of Appeals, which shifts the balance of equities in favor of Rueff.

Despite its inability to claim title as an equitable lienholder superior to that of the trustee, Rueff's position as an unpaid materialman causes *the creation of a trust for its benefit* of funds in the hands of the general contractors, thereby bypassing D & B's estate entirely. In effect, the funds are not, nor will they ever become, D & B's property, and the trustee can therefore lay no claim to them.

This result derives from observance of recent decisions which portend a judicial preference toward treating as a trust fund those monies held by general contractors to be paid eventually to satisfy materialmen's claims, obviating the assertion of any claim by the trustee of a bankrupt subcontractor.

Two recent Sixth Circuit decisions manifest cogent public policy considerations for conferring upon a materialman the status of a beneficiary, rather than that of a mere creditor, in assessing its claim vis-a-vis a bankrupt subcontractor's trustee.[13]

Both decisions arose from a question of entitlement of funds pursuant to a statutory trust fund in favor of subcontractors and materialmen under the Michigan Builder's Trust Fund Act.[14]

Under the act, money paid to a contractor is specifically designated a "trust fund" for the benefit of "contractors, laborers, subcontractors, or materialmen", with the general contractor acting as "trustee".

In *Selby v. Ford Motor Co.*,[15] the trustee in bankruptcy sought to recover as preferences payments made directly to subcontractors by the construction project's owner, bypassing the bankrupt general contractor entirely. The Court deferred to the subcontractors, and refused to acquiesce to the voidable preference claim of the trustee.

In weighing the merits of treating the fund as either a traditional trust, a security agreement akin to statutory lien, or as no interest at all, the Court concluded that the act created a traditional trust, vesting in the subcontractors an insoluble property right. It was noted that the distinction between a traditional trust and a statutory lien is twofold. A trust bestows upon the subcontractor or materialman beneficial title, with the contractor merely holding legal title as a trustee. A statutory lien requires timely and adequate perfection and may permit the claimant to assert a security interest, but the property is never undeniably his possession. Further, statutory trusts arise automatically, with perfection or filing being irrelevant.

That the decision in *Selby* was rendered on behalf of a subcontractor against a contractor makes no difference when applied to the facts herein. Indeed, in *Parker*, the companion case to *Selby*, the facts more closely parallel those of the case at bar. There the Court refused to set aside as preferences payments by a contractor to the bankrupt subcontractor's materialmen on identical grounds as in *Selby*. It found that the funds paid to the materialmen were never the subcontractor's property, but were beneficially owned by the materialmen. It also held that the Michigan Act was applicable to public, as well as private, construction projects.

In adhering to the *Selby* and *Parker* decisions, we acknowledge the public policy considerations that the court in those cases found so compelling. In a discourse on the judicial and legislative recognition of the commercial expectations of the building trades, the court in *Selby* noted that such recognition has resulted in the imposition of equitable and statutory trusts on funds in the hands of a general contractor:

13. *Selby v. Ford Motor Co. et al.*, 590 F.2d 642 (6th Cir. 1979); *Parker v. Klochko Equipment Rental Co., Inc. et al.*, 590 F.2d 649 (6th Cir. 1979), cert. denied, 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979).

14. Mich.Comp.Laws Ann. § 570.151 (1967).

15. Supra note 13.

[F]ederal bankruptcy courts in a variety of situations have refused to apply the property, preference and statutory liens sections of the Bankruptcy Act to favor unsecured creditors over the equitable claims of subcontractors and materialmen to the proceeds of a construction project in the hands of a bankrupt contractor.

State builders trust statutes simply recognize in statutory form the principles embodied in these court decisions. The remedies provided by mechanic's lien laws are unsatisfactory, and state legislatures in a number of states, like Michigan, have adopted builders trust fund statutes. The property rights created by these state statutes should be recognized and enforced in the bankruptcy system. The trustee in bankruptcy should not be permitted to appropriate the trust of another and distribute it to the bankrupt's creditors.[16]

While we seize upon the public policy rationale that underpins the *Selby* and *Parker* decisions, we observe that the strength of that reasoning would be attenuated in the absence of a statute from which a trust fund could be inferred. Put simply, we as a bankruptcy court must interpret, not make, state law.

In Kentucky, there is no common law support for the notion that otherwise unencumbered funds in the hands of a contractor are held in trust for the benefit of subcontractors and suppliers. However, support for such a claim may derive from a statutory provision, quite separate from the mechanic's lien statute, requiring contractors to pay in full all materialmen from funds they receive from the owner. That enactment states, inter alia, that:

(1) Any contractor, architect or other person who builds, repairs or improves the property of another under such circumstances that a mechanics' or materialman's lien may be imposed on the property shall, from the proceeds of any payment received from the owner, pay in full all persons who have furnished material or performed labor on the property.[17]

Unlike the Michigan Builder's Trust Fund Act, the provision cited above does not expressly establish a trust fund for the benefit of unpaid materialmen. However, such construction should be implied from the forceful wording of the act (coupled with criminal penalties for non-compliance),[18] as well as the strong public policy preference of trust fund theory enunciated in *Selby.*

Further, deference to Kentucky judicial construction of the act mandates its characterization as creating a trust fund. The Kentucky case upon which we rely, while not a bankruptcy case, nevertheless indicates a judicial inclination toward bestowing property rights upon unpaid materialmen in excess of mere lien rights.

In *Petter Supply Co. v. Hal Perry Constr.,*[19] a material supplier asserted a claim for unpaid funds held by a general contractor. The contractor contended that its obligation was to the subcontractor to whom the supplier provided material, not to the supplier. The Court concluded that the materialman was not only a third party beneficiary to a contract providing for payment, but was also entitled to the funds under KRS 376.070.

In analyzing the language of the act, especially the wording requiring payment under circumstances where a materialman's lien "may be imposed", the court found that:

This section is not made dependent upon the assertion of a lien as provided elsewhere in Chapter 376 but requires payment to materialmen where the circumstances are such that a "lien may be imposed". It requires a standard during construction, not retroactive application, and where this standard is ignored a lien

16. *Selby v. Ford Motor Co.,* supra note 13, at 648.

17. Ky.Rev.Stat. § 376.070.

18. Ky.Rev.Stat. § 376.990.

19. 563 S.W.2d 749 (Ky.App.1978).

may not lie if the time therefor elapses, but the duty of the contractor is clear.[20]

KRS 367.070 requires payment by a contractor regardless of the lapse of the materialman's lien rights. Indeed, in the *Petter Supply Co.* case *the supplier's lien rights had expired for want of timely filing.*

The property interest conferred upon a materialman for construction funds in a contractor's possession is greater than the interest that may be secured by filing a statutory materialman's lien. The supplier's right is above all a non-dissolvable property right, the same right *Selby* and *Parker* found inhered to materialmen under the Michigan Builder's Trust Fund Act.

To cling to nomenclatural stricture by refusing to apply trust fund status to funds in the hands of a contractor because Kentucky's statute fails to designate such funds as being held "in trust" would subvert the well-reasoned conclusions of our circuit court's decisions in *Selby* and *Parker.* The act's function should not be suppressed by superficial deference to its imprecise language. The Kentucky law clearly vests in materialmen a property right exceeding any other interest it may have as an ordinary creditor.

Since we are bound to apply Kentucky law, we cannot deny Rueff its property right and allow its derogation to the status of unsecured creditor. We must respect and preserve its right as beneficial owner of funds held presently by the general contractors.

This decision is not rendered in a jurisdictional vacuum. Other cases outside the Sixth Circuit have also imposed a trust fund on funds held by contractors.[21] Those decisions and the ones herein reflect judicial recognition of construction industry practicalities.

Our finding that Rueff is the beneficiary of a trust administered by the general contractor dispels the necessity of discussing the merits of the trustee's contention that any arrangement between Rueff and the generals should have been approved by D & B. We hold that since D & B was to be merely the conduit for payments that would eventually pass to Rueff, its assent was not required.

Since the funds are the possession of Rueff, and not D & B, our earlier discussion of the evidentiary distinction between a voidable preference claim and a claim as a hypothetical lien creditor is inapplicable. A beneficiary's claim of title to a trust transcends attack by the trustee in bankruptcy, regardless of whether the trustee's claim is based on § 60 or § 70.

That the construction jobs herein were public endeavors is also not an important distinction. In *Parker,* the Court concluded that public projects are indistinguishable under the Michigan Builder's Trust Fund Act from those that are privately funded. In *Petter Supply Co.,* the Kentucky court applied the Kentucky act to a publicly funded project without observing any difference between it and a private project.

We therefore conclude that Rueff, though unable to claim superior status as an equitable lienholder, has an enforceable beneficial interest in the trust funds represented by the jointly payable checks.

Upon the foregoing reasoning and authority, IT IS ORDERED that Rueff Lighting Company's claim be upheld. The petition of Rueff Lighting Company is hereby sustained. Judgment shall be entered accordingly.

20. Id., at 751.

21. *Carrier Corp. v. J. E. Schecter Corp.,* 347 F.2d 153 (2nd Cir. 1965); *In re H. G. Prizant & Co.,* 257 F.Supp. 145 (N.D.Ill.1965); see also 78 A.L.R.3d 563, 584 (1977).