COMMONWEALTH OF KENTUCKY for the Benefit of UNITED PACIFIC IN-SURANCE COMPANY and United Pacific Insurance Company, Plaintiffs-Appellees,

v.

LAUREL COUNTY and Laurel County Fiscal Court, Defendants and Third Party Plaintiffs-Appellants.

LAUREL COUNTY BOARD OF EDU-CATION, Defendant-Appellant,

v.

UNITED STATES of America, Third Party Defendant-Appellee.

Nos. 85–5498, 85–5499.

United States Court of Appeals, Sixth Circuit.

Argued July 14, 1986.

Decided Nov. 14, 1986.

Thomas H. Glover, argued, Hays, Moss and Lynn, Lexington, Ky., Elmer Cunnagin, Jr., Cunnagin & Cunnagin, London, Ky., for Laurel County and Laurel County Fiscal Court.

Thomas E. Meng, argued, Lexington, Ky., for Com. of Kentucky, and United Pacific Ins.

Roger M. Olsen, Tax Div., Dept. of Justice, Washington, D.C., William S. Estabrook, John A. Dudeck, Jr., for U.S.

Glenn L. Archer, Jr., Tax Div., Dept. of Justice, Washington, D.C., for amicus curiae.

William G. Crabtree, argued, London, Ky., for Laurel County Bd. of Educ.

Before LIVELY, Chief Judge; and WELLFORD and BOGGS, Circuit Judges.

WELLFORD, Circuit Judge.

Defendants Laurel County, Laurel County Fiscal Court, and Laurel County Board of Education (collectively, the "county agencies") appeal from an order of the district court granting plaintiff United Pacific Insurance Company (United Pacific), a performance and payment bond surety on a public construction project, summary judgment on its claim for funds payable under the construction contract. Defendant Laurel County Fiscal Court paid these funds over to the Internal Revenue Service (IRS) by virtue of a levy for unpaid taxes of the contractor Y & S Construction Company (Y & S). Defendants also appeal from an order of the district court dismissing their third-party complaint against the United States.

This damage action was brought in 1974 by United Pacific against the county agencies, the Laurel County Treasurer, and others with respect to a construction contract between Y & S and the county agencies for the construction of the Laurel County High School building at London, Kentucky. On July 28, 1975, the county agencies filed a third-party complaint against the United States. That claim was dismissed by the district court (Judge Moynahan) in a memorandum opinion entered on March 18, 1976. Thereafter, on January 16, 1985, the district court (Judge Bertelsman) entered findings of fact, conclusions of law, and a judgment, granting summary judgment in favor of United Pacific in the total amount of $197,728.39, including interest to November 8, 1984. On May 1, 1985, the district court filed an amended judgment adopting additional findings of fact and conclusions of law. The county agencies now appeal.

I.

Y & S contracted with the Laurel County Fiscal Court and the Laurel County Board of Education in 1969 for the construction of the school. At the time the construction

contract was signed, Y & S, as principal, and the plaintiff, United Pacific, as surety, executed and delivered a performance bond in the amount of the contract price, $2,524,-250, as well as a labor and material payment bond in the same amount.

On February 4, 1970, the IRS filed a notice of tax lien against taxpayer Y & S in the amount of $185,031.05. On March 11, 1970, a second and separate notice of tax lien was filed in the amount of $162,-718.64.[1] Y & S apparently failed to submit withholding taxes for its employees for July through December 1969. On or before March 4, 1970, Y & S defaulted in the performance of the construction contract when it was about 75 percent completed. United Pacific sent a letter to Leon Browning, the architect and owner's representative, requesting that no further contract funds be paid to the contractor or anyone else without its written consent. On March 15, 1970, Y & S sent letters to the Laurel County Fiscal Court and to Browning requesting that all funds due or about to be due on the contract be paid to United Pacific. The notice to the Fiscal Court was signed and returned by the County Treasurer, and the notice to Browning was signed and returned by him.

On April 17, 1970, Browning certified that $116,666.59 was due and payable to taxpayer Y & S. On or about May 15, 1970, United Pacific made demand on the Laurel County Fiscal Court for all sums coming due under the contract. The government's brief notes that on or about May 18, 1970, a notice of levy was served on the Laurel County Fiscal Court for taxes due and owing by Y & S in the amount of $100,833.91.

On May 18, 1970, when visited by an IRS Revenue Officer with this tax levy,[2] the Laurel County Fiscal Court paid the sum of

$100,833.91 to the IRS out of the School Construction Project Fund by a check endorsed by George Cloyd, Laurel County Treasurer. Prior to paying over the funds, Cloyd consulted two local attorneys, who advised that there might be personal liability if the IRS levy were not honored. Cloyd had earlier been authorized by resolution and order of the Laurel County Fiscal Court to make disbursements out of the School Construction Project Fund upon certification by Browning that the said funds were due and owing.

The Laurel County Treasurer advised United Pacific of the payment to the IRS in a letter dated May 18, 1970, and United Pacific duly and promptly protested the same. Ultimately, of the contract price of $2,554,532.15, $1,587,995.03 was in fact paid Y & S, $865,703.21 was paid to the surety, which completed the contract after Y & S's default, and $100,833.91 was paid to the IRS.

United Pacific seeks damages by a breach of contract action for the amount paid to the IRS (i.e., $100,833.91). The defendants joined the United States as a third-party defendant on July 28, 1975. In dismissing the claim against the United States, the district court held that the defendants had not complied with the nine-month limitations period for bringing actions for alleged wrongful tax levies.

The district court later found that as a matter of state law "the funds due under the contract had not become the property of the taxpayer" because "[t]he Kentucky statutory provision, KRS 376.070, establishes a trust fund for the benefit of unpaid materialmen, and as such the funds due under the contract were not and never became the property of the taxpayer." In so ruling, the court noted that Section 6332(d)

1. The district court made no findings of facts with respect to these filing dates and amounts. Counsel for the government supplies this information in his brief.

2. In their joint pretrial order, the parties stipulated the fact of the May 18, 1970, IRS levy "[s]ubject to production of levy." The defendants failed to produce a copy of the levy, although they were ordered to do so on two separate occasions by the district court. A copy of a blank "notice of levy" form ordinarily used by the IRS during this period was filed as a part of the record. We therefore face the anomaly of deciding the effect of a purported levy that is not a part of the record.

of the Internal Revenue Code does not relieve a person mistakenly or erroneously making payment to the IRS pursuant to a tax levy from liability to the true owner of the funds. Accordingly, judgment against defendants was entered on January 16, 1985, in the sum of $197,728.39, including interest.

## II.

■ In ruling on the motion of plaintiff United Pacific for summary judgment, Judge Bertelsman wrote in his January 16, 1985, conclusions of law:

4. This Court must look to state law to control the determination of the nature of the legal interest of the taxpayer in the property (funds due under the contract). Whether this property interest under state law constitutes "property or rights to property" subject to levy is strictly a matter of federal law. *Aquilino v. United States*, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); *United States v. Lebanon Woolen Mills Corp.*, 241 F.Supp. 393 (1964); *City of New York v. United States*, 283 F.2d 829 ([2nd Cir.] 1960).

5. That upon default by the taxpayer, Y & S Construction Company, the funds due under the contract had not become the property of the taxpayer under state law. KRS 376.070(1); *In re D & B Elec., Inc.*, 4 B.R. 263 (W.D.Ky.1980); *Blanton v. Commonwealth, Ky.*, 562 S.W.2d 90 ([Ct.App.]1978).

6. The Kentucky statutory provision, KRS 376.070, establishes a trust fund for the benefit of unpaid materialmen, and as such the funds due under the contract were not and never became the property of the taxpayer.

7. Under federal law, the taxpayer, Y & S Construction Company, had no property interest under state law constituting "property or rights to property" subject to levy. *United States v. Durham Lum-*

 *ber Co.*, 363 U.S. 522, 4 L.Ed.2d 1371, 80 S.Ct. 1282 (1958).

8. The rights of the Plaintiff, United Pacific Insurance Company, accrued as of the time of the execution of the bonds. Upon satisfying the materialmen and laborers, the Plaintiff surety became subrogated to all rights of the owner, laborers and materialmen to funds due under the contract. [Citations omitted].

Thus, the district court concluded that the IRS tax lien did not properly attach to the right of Y & S to receive payments under the construction contract and that the payment honoring the IRS levy on its lien by the county agencies was wrongful. *See* 26 U.S.C. §§ 6321, 6332.

We note with concern the extreme delays, attributable to the handling of this case by the district judge originally assigned, and the inadequate record developed concerning the levy in this case. This litigation concerns events which occurred in early 1970; the initial complaint in this case was filed in 1974; and the final judgment below, disposing of this case on motions for summary judgment, was not entered until 1985.[3] Moreover, our resolution of the issues here is made more difficult by the failure of the parties to offer into evidence the notice of levy allegedly served on May 18, 1970.[4] Although the affidavit of the county treasurer, the responsible county officer who apparently received the IRS demand for payment and issued a check to the IRS, states that a "lawful levy" was made on May 18, 1970, for the progress payment at issue, the county treasurer's deposition is less than a model of clarity concerning the fact of the serving of the notice of levy. (By the time of the county treasurer's 1982 deposition, he was 87 years old, and by 1984 the other three individuals with personal knowledge of the levy—the two attorneys consulted by the treasurer and the IRS agent involved— were all deceased.) For its part, the district court found that, "[a]s evidenced by the tax levy form stipulated into evidence,

---

**3.** This case was not assigned to Judge Bertelsman until May 1983, and he promptly reached disposition.

**4.** *See supra* note 2.

the actual levy, if any, was a general levy upon all property or rights to property belonging to the taxpayer, Y & S Construction Company." Its conclusions, however, rendered any further factual findings concerning the levy immaterial.

The Internal Revenue Code gives the United States a lien upon "all property and rights to property, whether real or personal," belonging to a delinquent taxpayer. 26 U.S.C. § 6321. The Code further provides that, after notice and demand to a delinquent taxpayer, the Secretary may collect such tax by levy upon "all property and rights to property ... belonging to such person or on which there is a lien provided in this chapter for the payment of such tax." 26 U.S.C. § 6331(a). The term "levy" includes "the power of distraint and seizure by any means." 26 U.S.C. § 6331(b). Treasury regulations provide that such a seizure may be made by serving a notice of levy. 26 C.F.R. § 301.6331–1(a)(1). Section 6332(a) provides for such a levy upon a custodian of the delinquent taxpayer's property. 26 U.S.C. § 6332(a). *See United States v. National Bank of Commerce,* 472 U.S. 713, 105 S.Ct. 2919, 2924–25, 86 L.Ed.2d 565 (1985). Thus, the threshold question in this case is whether the interest of the taxpayer, Y & S, in the progress payment partially surrendered to the IRS constituted property or rights to property under 26 U.S.C. § 6321. The plaintiff surety does not, and in our view could not, argue that the levy in this case was improper or unlawful if taxpayer Y & S had any interest in the progress payment to which the tax lien could have attached. *See United States v. National Bank of Commerce, supra.*

As the district court concluded, state law controls whether the taxpayer, Y & S, had a property interest in the progress payment, but once a property interest is found federal law determines the consequences flowing from the levy. *Compare Aquilino v. United States,* 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960) (remanding to New York Court of Appeals for determination of whether state law created trust for the benefit of subcontractors, divesting contractor-taxpayer of any beneficial interest), *with United States v. Durham Lumber Co.,* 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 (1960) (decided same day as *Aquilino;* affirming Fourth Circuit holding that tax lien did not attach to interest of contractor-taxpayer in amounts owed under construction contract where state law provided trust for the benefit of subcontractors). *See also* Note, *Property Subject to Federal Tax Lien,* 77 Harv.L.Rev. 1485 (1964). The district court relied on a Kentucky statute and two cases construing Kentucky law to find that Y & S had no property interest. *See* Ky.Rev.Stat. § 376.-070 (1972); *In re D & B Electric, Inc.,* 4 B.R. 263 (Bankr.W.D.Ky.1980); *Blanton v. Commonwealth,* 562 S.W.2d 90 (Ky.App. 1978).

The Kentucky statute relied upon by the district court imposes an obligation on a contractor to apply payments from the owner to claims of those who have furnished labor or materials to the project:

**376.070. Contractor or architect to apply payments to claims—Exception where lien waived.—**(1) Any contractor, architect or other person who builds, repairs or improves the property of another under such circumstances that a mechanics' or materialman's lien may be imposed on the property shall, from the proceeds of any payment received from the owner, pay in full all persons who have furnished material or performed labor on the property.

(2) If any payment by the owner to the contractor, architect or other person is not sufficient to pay in full all bills for material and labor, then such claims shall be paid on a pro rata basis to the amount of payments received, unless otherwise agreed between the contractor, architect or other person and the holder of the claim for material or labor.

(3) This section shall not apply where persons furnishing material or performing labor have waived in writing their right to file mechanics' or materialmen's liens.

Ky.Rev.Stat. § 376.070 (1972).[5] This statute is found in the chapter relating to "Statutory Liens" and is both preceded and followed by provisions for mechanics' and materialmen's liens. *See* Ky.Rev.Stat. §§ 376.010 (creating mechanics' and materialmen's liens; filing required), 376.090(1) (12–mo. period of limitation), 376.990(2) ($50–1000 fine or 1–12 mos. imprisonment, or both, for violation of 376.070).

In *Blanton v. Commonwealth*, 562 S.W.2d 90, 91–93 (Ky.App.1978), Kentucky's intermediate appellate court held that Ky.Rev.Stat. § 376.070 imposed upon an individual building contractor a "known legal obligation" (i.e., to pay in full all claims for material and labor involving a particular job out of the payments received from the owner) sufficient to support a felony criminal conviction under Ky.Rev. Stat. § 514.070(1) for theft by failure to make a required disposition of property. The opinion neither discusses nor rests upon any argument that § 376.070 creates a trust by implication.

In the principal case relied upon by the district court, a bankruptcy court interpreted § 376.070 as creating a trust fund by implication in order to resolve competing claims of a materialman and the trustee in bankruptcy. *In re D & B Electric, Inc.*, 4 B.R. 263 (Bankr.W.D.Ky.1980). The bankruptcy trustee claimed a superior right under § 70(c) of the Bankruptcy Act to two checks held by a materialman and jointly payable to the materialman and the bankrupt, the subcontractor on the project. The materialman supplied lighting fixtures for two projects on which the bankrupt was

the electrical subcontractor, and the bankrupt fell into arrears in its accounts with the materialman. The materialman failed to file, as was its statutory right, a lien against the materials furnished. After the period within which the materialman could have filed its lien, it entered into two settlement agreements with the general contractors on the projects, who each issued a check payable jointly to the materialman and the bankrupt for the unpaid amounts. On these facts, the bankruptcy court held:

> Despite its inability to claim title as an equitable lienholder superior to that of the trustee, Rueff's position as an unpaid materialman causes the *creation of a trust for its benefit* of funds in the hands of the general contractors, thereby bypassing D & B's [the bankrupt's] estate entirely. In effect, the funds are not, nor will they ever become, D & B's property, and the trustee can therefore lay no claim on them.

*Id.* at 268 (original emphasis).

In reaching this holding, the bankruptcy court relied upon *Selby v. Ford Motor Co.*, 590 F.2d 642 (6th Cir.1979), and *Parker v. Klochko Equipment Rental Co., Inc.*, 590 F.2d 649 (6th Cir.), *cert. denied*, 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979), cases imposing a trust fund on payments to the contractor in favor of materialmen under *Michigan* law. 4 B.R. at 268–69. As the bankruptcy court noted, however, the Michigan statute *Selby* and *Parker* relied upon expressly creates such a trust fund,[6] *id.* at 268, while the Kentucky statute, "[u]nlike the Michigan Builder's Trust Fund Act, ... does not expressly establish

---

**5.** The defendants argue that Ky.Rev.Stat. § 376.-070 is inapplicable to public construction projects because of the separate statutory scheme for mechanics' and materialmen's liens on public projects. *See* Ky.Rev.Stat. §§ 376.-195–376.260. One Kentucky case, however, seems to foreclose this argument by expressly relying in part upon § 376.070 in a public construction contract case. *See Petter Supply Co. v. Hal Perry Construction*, 563 S.W.2d 749, 750, 751 (Ky.App.1978).

**6.** The statute provides:

In the building construction industry, the building contract fund paid by any person to

a contractor, or by such person or contractor to a subcontractor, *shall be considered by this act to be a trust fund,* for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and *the contractor or subcontractor shall be considered the trustee of all funds so paid to him* for building construction purposes. Mich.Comp.Laws § 570.151, Mich.Stat.Ann. § 26.331 (emphasis added). The next following code section criminalizes fraudulent detention or use of such funds. Mich.Comp.Laws § 570.-152, Mich.Stat.Ann. § 26.332.

a trust fund for the benefit of unpaid materialmen." *Id.* at 269. The bankruptcy court reasoned:

> However, such construction should be implied from the forceful wording of the act (coupled with criminal penalties for non-compliance), as well as the strong public policy preference of trust fund theory enunciated in *Selby.*

*Id.* (footnote omitted). The court further relied on *Petter Supply Co. v. Hal Perry Construction,* 563 S.W.2d 749, 751 (Ky. App.1978), which held that a materialman was a third party beneficiary to a contract providing for payment and that Ky.Rev. Stat. § 376.070 imposed a duty on the contractor regardless of the lapse of the materialman's lien rights. The opinion in *Petter* neither discusses nor rests upon any argument that § 376.070 creates a trust by implication.

The district court's reliance on *D & B Electric* is misplaced, and the opinion in *D & B Electric* itself is fundamentally flawed. The holding of *D & B Electric* has been very narrowly construed by other subsequent bankruptcy court decisions construing § 376.070 (including two by the judge who wrote *D & B Electric*[7]) and its reasoning has been rejected by other courts. In addition to the subsequent decisions narrowly construing *D & B Electric* and questioning its effect, other courts have declined to adopt the rationale of *D & B Electric* in interpreting § 376.070. *See In re The Dave Thomas Co., Inc.,* 51 B.R. 66 (Bankr.W.D.Ky.1985); *In re Allgeier & Dyer,*[8] 18 B.R. 82 (Bankr.W.D.Ky.1982). Finally, several well reasoned opinions facing similar questions under the laws of other states have expressly declined to follow *D & B Electric. See Georgia Pacific Corp. v. Sigma Service Corp.,* 712 F.2d 962, 967–72 (5th Cir.1983); *In re Georgia Steel, Inc.,* 56 B.R. 509, 516–17 (Bankr.M.D.Ga.1985).

We therefore find that the district court in this case erred in relying upon *D & B Electric* and *Blanton,* and we conclude that taxpayer Y & S indeed possessed "property" or "rights to property" under Kentucky law in the progress payments at issue. Because, however, we cannot be certain concerning the existence of the IRS levy, we are compelled to remand for a finding on this critical factual issue. The district court made no specific factual finding as to the existence, date, or service of the critical levy.

### III.

The district court also ruled that federal law did not protect the county agencies from liability for wrongful payment pursuant to an IRS administrative levy:

> Section 6332(d) of the Internal Revenue Code of 1954 does not relieve a person mistakenly or erroneously making payment to the Internal Revenue Service pursuant to a tax levy of liability to the true owner of the funds. The Defendants, Laurel County, Laurel County Fiscal Court and the Laurel County Board of Education, are not entitled to take credit for the amount paid to the Internal Revenue Service against the amount due under the contract to the Plaintiff, United Pacific Insurance Company.

In its amended judgment, the district court further concluded that

> plaintiff is under no legal obligation to the defendants to pursue the remedy contained in 26 U.S.C. § 7426(a)(1) in order to recover the funds wrongfully paid to the IRS. Lastly, plaintiffs' failure to bring suit under 26 U.S.C. § 7426(a)(1) operates neither as an election of remedies, *Collings v. Scheen,* 415 S.W.2d 589, 591 (Ky.1967), nor a waiver of its contractual rights against defendants.

---

7. *See In re Glover Construction Co., Inc.,* 30 B.R. 873 (Bankr.W.D.Ky.1983); *In re Jeanes Mechanical Contractors, Inc.,* 32 B.R. 657 (Bankr.W.D. Ky.1983).

8. *In re LaFollette Sheet Metal, Inc.,* 35 B.R. 634 (Bankr.E.D.Tenn.1983) neither rejected nor adopted *D & B Electric,* stating: "[I]t is not necessary for this court to decide whether to follow the holding of *D & B Electric....*" 35 B.R. at 638.

The county agencies and the government as amicus curiae forcefully argue that the district court's ruling conflicts with established federal case law. We agree.

 The district court correctly held that 26 U.S.C. § 6332(d) does not provide the county agencies a defense; the district court overlooked, however, the common law that existed well before § 6332(d) was enacted as a part of the Federal Tax Lien Act of 1966, Pub.L. No. 89–719, § 104(b)(4), 80 Stat. 1135 (1966). The county agencies and the county treasurer were required, at the risk of liability imposed directly on them (which could have included the principal amount due, costs, interest, and stiff penalties), to honor the levy. *See* 26 U.S.C. § 6332(c). The courts have held that a person served with a notice of levy has only two possible defenses for failure to comply with the demand: (1) that he is not in possession of the taxpayer's property or property in which the taxpayer has any interest, and (2) that the property is subject to a prior judicial attachment or execution. *United States v. National Bank of Commerce*, 472 U.S. 713, 105 S.Ct. 2919, 2925, 86 L.Ed.2d 565 (1985). The fact that other parties may have competing claims to the property is not one of these defenses. *See, e.g., Determan v. Jenkins*, 111 F.Supp. 604, 605 (N.D.Ga.1953).

Prior to the enactment of § 6332(d), the Internal Revenue Code was silent as to the consequences of a debtor of a taxpayer honoring an IRS levy. Section 6332(d) provides that any person honoring a federal tax levy by surrendering property subject to levy "shall be discharged from any obligation or liability *to the delinquent taxpayer* with respect to such property or rights to property arising from such surrender or payment." 26 U.S.C. § 6332(d) (emphasis added). Section 6332(d) discharges a custodian from liability to the taxpayer but is silent as to third parties.[9] We believe that the silence of § 6332(d) strongly suggests congressional intent not to disturb existing case law concerning the potential liability of custodians to third parties.

The case law clearly holds that a payment made by a custodian of property in which the taxpayer has an interest pursuant to an IRS administrative levy is a valid defense to a subsequent action by a third party claiming an interest in the property. The cases cited by the government, although few, do support this proposition. *See Determan v. Jenkins*, 111 F.Supp. 604 (N.D.Ga.1953); *Sebel v. Lytton Savings and Loan Association*, 65–1 U.S.Tax Cas. (CCH) ¶ 9343 (S.D.Cal.1965); *Bolling v. Samples*, 117 Ga.App. 38, 159 S.E.2d 727 (1967); *DiEdwardo v. First National Bank of Bath*, 442 F.Supp. 499 (E.D.Pa. 1977); *see also United States v. National Bank of Commerce*, 472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985).

*Determan, DiEdwardo, Sebel,* and *Bolling* all hold custodians harmless to claims of third parties, even where the payment may have been wrongful, citing the remedies expressly available to third parties under the tax code, *see* 26 U.S.C. § 7426(a)(1), and the administrative needs of the federal tax system. In *United States v. National Bank of Commerce* the Court held that a bank could not lawfully refuse to honor a levy on a joint account on the ground that the possibility existed that the bank would

9. The Treasury regulation relied upon by the surety, 26 C.F.R. § 301.6332–1(c) (1985), is also inapposite. The regulation provides:

Any person who mistakenly surrenders to the United States property or rights to property not properly subject to levy is not relieved from liability to a third party who owns the property. The owners of mistakenly surrendered property may, however, secure from the United States the administrative relief provided for in section 6343(b) or may bring suit to recover the property under section 7426.

In our view, the regulation correctly states the effect of § 6332(d) on liability to third parties: the statute does not relieve custodians of such liability. We do not interpret the statute or the regulation, however, to impose such liability. Neither does it purport to reject case law providing a defense to such liability.

There is no evidence here that the county agencies "mistakenly" honored the levy here. If there was a levy, the county agencies made no mistake in honoring a lawful levy. If no levy is proven on remand, the case law discussed below provides the county agencies no defense.

be liable to nontaxpayer third parties having an interest in the account. The Court relied heavily on the fact that the law provides a remedy for third parties adversely affected by a levy. 105 S.Ct. at 2928–29, 2930.

We thus hold that where, as alleged here, the custodian of a taxpayer's property or rights to property has at the time of levy no defense for failure to comply with the levy (i.e., the custodian cannot claim that it is neither "in possession of" nor "obligated with respect to" property of the taxpayer or that the taxpayer's property is subject to a prior judicial attachment or execution, *see United States v. National Bank of Commerce*, 105 S.Ct. at 2925) and thus honors a lawful IRS levy, the custodian has a valid and complete defense under federal law to claims of third parties with interests in the property surrendered.[10] Therefore, if on remand an IRS levy is proven, the county agencies would be entitled to this defense under federal law; if, however, an IRS levy is not proven, this defense would not be available. Because we cannot be certain that the IRS levy alleged will be proven on remand, we are compelled to address the remaining issue presented by the county agencies on appeal.[11]

### IV.

The county agencies argue that the district court erred in dismissing their third-party complaint against the United States.

On March 19, 1976, the district court dismissed the county agencies' third-party complaint as untimely. The county agencies asserted in their third-party complaint that, if they were found to be liable to the plaintiff surety for the amount paid to the IRS, then the United States should be held liable to the county agencies in the same amount. Noting that "under the doctrine of sovereign immunity the United States cannot be sued absent legislative enactment specifically waiving sovereign immu-

nity," the district court found only one applicable statutory provision, 26 U.S.C. § 7426. The district court held that under the appropriate statute of limitations, *see* 26 U.S.C. § 6532(c) (9–mo. period of limitation), and any applicable exceptions, *see* 26 U.S.C. § 6532(c)(2) (12–mo. period of limitation conditioned on filing of request for return of property), the county agencies' third-party complaint, filed more than five years after the events at issue, was untimely.

The county agencies' principal argument on appeal is that the district court should have treated their third-party complaint as an action for interpleader under 28 U.S.C. § 2410(a)(5). The county agencies' argument is without merit, however, because, having honored the levy, they could not maintain an interpleader action under § 2410(a)(5) as they were not stakeholders in possession of property subject to conflicting claims. *See Johnson Service Co. v. H.S. Kaiser Co.*, 324 F.Supp. 745, 749–50 (N.D.Ill.1971); *South Brooklyn Savings Bank v. All State Insurance Co.*, 84 Misc.2d 287, 375 N.Y.S.2d 273 (N.Y.Sup. Ct.1975). Nor is a Rule 22 interpleader proceeding against the United States an available remedy to Laurel County in this case. An interpleader proceeding does not establish jurisdiction: "The United States may not be required to interplead when it has not waived its sovereign immunity." 7 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1721, at 654 (2d ed. 1986) (citing, *inter alia, United States v. Dry Dock Savings Institution*, 149 F.2d 917 (2d Cir.1945)). There has been here no waiver of sovereign immunity with respect to the Laurel County claim. Section 2410(a)(5), moreover, by its express language applies only to controversies over property "on which the United States has or claims a mortgage or other lien." This is simply not such a dispute. There is no claim for mortgage or other lien; rather, a tax levy[12] is involved.

---

10. Because the facts of this case do not present the issue, we do not decide whether federal law provides the custodian a defense to claims of third parties where the custodian may have had defenses to a lawful IRS levy.

11. Defendants argue that they are immune from suit in this matter under the state constitutional law doctrine of sovereign immunity and under state common law. Because these issues were neither addressed nor relied on by the district court in its decision, we do not reach them.

 Although defendant Laurel County Board of Education addresses the issue in its brief, the

defendants Laurel County and Laurel County Fiscal Court do not in their brief and did not at oral argument contend that the district court erred in granting the motion of the Board of Education for summary judgment on its crossclaim against the County and the Fiscal Court for indemnity. We treat any claim of error on this issue to be waived.

12. "Levy" and "lien" are not synonymous. *See* Black's Law Dictionary at 816, 832 (5th ed. 1979). "Levy" is a form of "seizure." *See* 53 C.J.S. "Levy" at 2 (1948); *see also* 84 C.J.S. *Taxation* § 349 (1954).

■ The reasoning of the district court is, moreover, entirely sound. The only arguably applicable provision available to the county agencies as a basis for their claim was 26 U.S.C. § 7426.[13] The appropriate statute of limitations, 26 U.S.C. § 6532(c), provides that a wrongful levy suit must be commenced within nine months of the date of levy or, if an administrative request for the return of the property is filed within the nine-month period, the suit must be commenced within twelve months of the filing of the request. Thus, as the district court correctly concluded, a wrongful levy suit must be filed, at the latest, within twenty-one months of the levy. The county agencies' third-party complaint is, therefore, time-barred as it was filed more than five years after the levy in question.

The judgment of the district court is accordingly AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.

---

13. Indeed, the response filed by the county agencies to the motion of the United States to dismiss the third-party complaint relies solely upon 28 U.S.C. § 2410 and 26 U.S.C. § 7426 as the statutory waivers of sovereign immunity allegedly applicable on these facts.