In re LAFOLLETTE SHEET
METAL, INC., Debtor.

Thomas H. DICKENSON, Trustee of La-
follette Sheet Metal, Inc., Plaintiff,

v.

HACKER BROTHERS, INC.; AE
Systems, Inc.; and Kelly Energy
Systems, Inc., Defendants,

Brennenstuhl-Bryant Lumber Co., Inc.,
Intervening Plaintiff.

AE SYSTEMS, INC., Cross-Plaintiff,

v.

HACKER BROTHERS, INC.,
Cross-Defendant.

AE SYSTEMS, INC. Third-Party
Plaintiff,

v.

UNITED STATES FIDELITY &
GUARANTY COMPANY
Third-Party Defendant.

Bankruptcy No. 3-82-01905.
Adv. No. 3-83-0497.

United States Bankruptcy Court,
E.D. Tennessee.

Dec. 9, 1983.

Robertson, Williams, Ingram, Faulkner &
Overbey, J. Douglas Overbey, Knoxville,
Tenn., for plaintiff.

Weill, Ellis, Weems & Copeland, Richard
T. Klingler, Chattanooga, Tenn., for defend-
ant AE Systems, Inc.

William Hensley, Corbin, Ky., for defend-
ant Hacker Brothers, Inc.

Dale S. Ditto, Stanford, Ky., for intervening plaintiff Brennenstuhl-Bryant Lumber Co., Inc.

MEMORANDUM ON MOTIONS OF PLAINTIFF TRUSTEE AND DEFENDANT AE SYSTEMS, INC. FOR PARTIAL SUMMARY JUDGMENT AND MOTION FOR SUMMARY JUDGMENT OF INTERVENING PLAINTIFF BRENNENSTUHL-BRYANT LUMBER CO., INC.

CLIVE W. BARE, Bankruptcy Judge.

At issue is whether construction contract retainage funds, claimed by the bankruptcy trustee of a debtor subcontractor, are held in trust by the general contractor for the benefit of the subcontractor's suppliers. Plaintiff trustee contends that the retainage funds are unencumbered property of the debtor's estate. Denying that the trustee has any interest in the funds, the trustee's opponents maintain that the debtor does not have any equitable interest in the retainage monies, 11 U.S.C.A. § 541(d) (1979). Alternatively, it is contended that any interest of the trustee is subject to recoupment or setoff rights of the general contractor, 11 U.S.C.A. § 553 (1979).[1]

I

Hacker Brothers, Inc. (Hacker), a corporation doing business in the state of Kentucky, was the general contractor for the construction of a school building in Williamsburg, Kentucky. Hacker contracted with debtor LaFollette Sheet Metal, Inc. on June 26, 1981, for the installation of the school building roof. AE Systems, Inc., Brennenstuhl-Bryant Lumber Co., Inc., and Kelly Energy Systems, Inc. all furnished materials to the debtor in furtherance of its performance as a subcontractor of the school construction project.

As of December 16, 1982, the date of the debtor's bankruptcy petition, Hacker had not made final payment to the debtor. Pursuant to its contract with the debtor, Hacker had retained 10% from each progress payment to the debtor, creating a retainage fund in an alleged amount of $17,571.00. On January 18, 1983, apparently unaware of the debtor's bankruptcy filing, Hacker·paid AE Systems and Kelly Energy Systems, Inc., the respective sums of $6,873.81 and $1,971.00 from the retainage fund, in satisfaction of their prepetition claims against the debtor.

On May 26, 1983, the trustee filed a complaint requesting turnover of the retainage monies pursuant to 11 U.S.C.A. § 542 (1979) and avoidance of the postpetition payments to AE Systems and Kelly Energy Systems, 11 U.S.C.A. § 549 (1979). An application to approve a compromise and settlement between the trustee and Hacker was filed on July 20, 1983. Although asserting it did so without notice of the filing of the debtor's petition, Hacker admits it made postpetition payments totaling $10,249.07 from the controverted retainage funds. (In addition to the aforementioned payments to AE Systems and Kelly Energy Systems, Hacker paid $1,364.26 to Dixie Roofing, Inc. to complete the debtor's unfinished contract and a $40.00 clean-up fee on behalf of the debtor.) Hacker agreed to pay $7,321.73, the balance of the retainage monies in its possession, to the trustee in satisfaction of his claim against it. An order was entered on September 9, 1983, approving the compromise and settlement.

On August 22, 1983, previous to the entry of the court's order approving the settlement between the trustee and Hacker, Brennenstuhl-Bryant Lumber Co., Inc. filed an intervening complaint[2] requesting the court to find that the trustee has no interest in the retainage fund to the extent of any unpaid materialmen's claims. Addi-

---

1. Defendant AE Systems, Inc. has also questioned the jurisdiction of this court. However, any objection to the jurisdiction of the court in this action is controlled by the decision in *White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254 (6th Cir.1983) (Emergency Interim Rule

adopted in response to Supreme Court decision in *Northern Pipeline* is valid).

2. The court granted the Brennenstuhl-Bryant motion to intervene on July 25, 1983.

tionally, Brennenstuhl-Bryant asks the court to order Hacker to pay to it the sum of $1,322.88, for materials furnished to the debtor, from the retainage monies. Brennenstuhl-Bryant also filed a motion for summary judgment in conjunction with its intervening complaint.

Respective motions for partial summary judgment have been filed by both the trustee and AE Systems on the issues of the trustee's interest in the retainage monies and the avoidability of the $6,873.81 postpetition payment to AE Systems.[3] The trustee asserts that the retainage fund is property of the debtor's estate and that he is entitled to recover the amount of the fund as of the date of the debtor's petition. Consequently, the trustee contends that the postpetition payments from the retainage fund to AE Systems and Kelly Energy Systems are avoidable pursuant to 11 U.S.C.A. § 549 (1979).

In contradistinction, AE Systems and Brennenstuhl-Bryant each argue that the debtor has only a legal interest in the retainage fund because the fund is impressed with a trust for the benefit of unpaid suppliers of the debtor. Furthermore, AE Systems contends that the debtor's claim to the retainage fund is subject to the recoupment or setoff rights of Hacker, the general contractor.[4]

## II

Section 541 of Title 11 of the United States Code enacts in material part:

(a) The commencement of a case under section 301 . . . of this title creates an estate. Such estate is comprised of all the following property, wherever located:

(1) [With exceptions immaterial herein] . . . all legal or equitable interests of the debtor in property as of the commencement of the case.

. . . .

(d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, . . . becomes property of the estate under subsection (a) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

A resort to applicable nonbankruptcy law is necessary to determine whether the debtor has an interest in the property at issue.

Ky.Rev.Stat. § 376.070 (1972)[5] enacts in relevant part:

*Contractor or architect to apply payments to claims—Exception where lien waived.* —(1) Any contractor, architect or other person who builds, repairs or improves the property of another under such circumstances that a mechanics' or materialman's lien may be imposed on the property shall, from the proceeds of any payment received from the owner, pay in full all persons who have furnished material or performed labor on the property.

AE Systems and Brennenstuhl-Bryant contend that this enactment creates a statutory trust.[6] In support of this contention they

---

**3.** The trustee also avers that AE Systems received a voidable preference through the return to it of six rolls of rubber tubing, previously sold for $3,816.00 to the debtor, in exchange for the issuance of a credit memo. AE Systems maintains that Dixie Roofing Company, which completed the debtor's contract on the school project, obtained the rubber tubing from the debtor; that it received $1,984.32 from Dixie Roofing Company in consideration of the use of three of the six rolls of rubber tubing; that the remaining three rolls will be returned to the trustee; and that its liability, if any, under Code § 547(b) is limited to $1,984.32. Decision is reserved with respect to the alleged preferential transfer.

**4.** Kelly Energy Systems has neither filed an answer to the complaint nor appeared at any of the scheduled hearings in this action.

**5.** One of the general conditions of the contract between Hacker and the Kentucky School Building Authority provides that their agreement will be governed by the law of the situs of the project (Kentucky). The debtor's contract with Hacker incorporates the general conditions of Hacker's contract with the owner.

**6.** Materialmen for the Williamsburg School Project were entitled to perfect a lien against the funds due the contractor. Ky.Rev.Stat. § 376.210 (1972). Neither AE Systems nor Brennenstuhl-Bryant complied with the procedure to perfect their lien.

cite *In re D & B Elec., Inc.*, 4 B.R. 263 (Bkrtcy.W.D.Ky.1980), decided under the former Bankruptcy Act. *D & B Electric* involved a dispute between a trustee in bankruptcy and Rueff Lighting Company, a supplier of the bankrupt subcontractor. Waiving its right to assert a materialman's lien, Rueff obtained agreements from two general contractors for the issuance of checks jointly payable to it and D & B. (The period within which Rueff could have perfected a materialman's lien had already lapsed when these agreements were reached.) Two unendorsed checks, jointly payable to D & B and Rueff, in Rueff's possession on the date of bankruptcy were claimed by the trustee. Although the court rejected Rueff's argument that it was entitled to an equitable lien superior to the trustee's rights, the court nevertheless determined:

> Rueff's position as an unpaid materialman causes *the creation of a trust for its benefit* of funds in the hands of the general contractors, thereby bypassing D & B's estate entirely. In effect, the funds are not, nor will they ever become, D & B's property, and the trustee can therefore lay no claim to them. (Emphasis in original.)

*In re D & B Elec. Inc.*, 4 B.R. at 268. This determination was based on (i) the court's opinion that Ky.Rev.Stat. § 376.070 (1972) (coupled with criminal penalties [7] for noncompliance) implicitly creates a trust fund for the benefit of unpaid materialmen; (ii) the public policy considerations discussed in *Selby v. Ford Motor Co.*, 590 F.2d 642 (6th Cir.1979) [8] (payments to subcontractors within four months of bankruptcy

not subject to avoidance as preferences by trustee of bankrupt general contractor because funds were impressed with a statutory trust under Michigan law), and (iii) the decision in *Henry A. Petter Supply Co. v. Hal Perry Constr. Co.*, 563 S.W.2d 749 (Ky. App.1978) (unpaid supplier of fully paid subcontractor entitled to payment from general contractor and its surety pursuant to both express agreement and as a third-party beneficiary). [9]

The trustee urges the court to reject the rationale in *D & B Electric* and follow instead the holding of *In re Allgeier & Dyer, Inc.*, 18 B.R. 82 (Bkrtcy.W.D.Ky. 1982), *appeal dismissed, In re Allgeier & Dyer, Inc.*, 28 B.R. 371 (D.C.W.D.Ky.1982). The debtor in *Allgeier & Dyer* was a general contractor of a project against which thirty-two (32) or more mechanics' liens had been filed. A fund of $291,407.00, representing the amount earned but unpaid when the debtor filed bankruptcy, had been turned over to debtor's trustee pursuant to court order. Rejecting *D & B Electric* as factually distinct and without any discussion of Ky.Rev.Stat. § 376.070 (1972), the court decided that the construction contract proceeds were property of the debtor's estate. [10] Thus, it was incumbent upon the trustee to examine each materialman's lien claim and to avoid any unperfected liens not enforceable against him. Materialmen having unperfected liens were merely holders of unsecured claims.

No reported Kentucky state court decision on the question of whether Ky.Rev. Stat. § 376.070 (1972) creates a trust fund has been cited to or discovered by this court. [11] *Henry A. Petter Supply Co. v. Hal*

---

**7.** Ky.Rev.Stat. § 376.990 (1972) recites in part:
*Penalties* —

. . . .

(2) Any person who violates any of the provisions of KRS ... 376.070 shall be fined not less than fifty dollars ($50.00) nor more than one thousand dollars ($1,000.00), or imprisoned for not less than one (1) month nor more than twelve (12) months, or both.

**8.** See *Selby v. Ford Motor Co.* 590 F.2d at 647.

**9.** See *In re Glover Constr. Co., Inc.*, 30 B.R. 873 (Bkrtcy.W.D.Ky.1983), for a discussion of the *D & B Electric* decision.

**10.** *D & B Electric* and *Allgeier & Dyer,* decided in the same court, were decided by different judges. The opinion in *D & B Electric* was rendered by Judge Deitz, whereas Judge Bland issued the decision in *Allgeier & Dyer.*

**11.** The duty of a contractor under Ky.Rev.Stat. § 376.070 (1972) to apply amounts received from an owner of a construction project against claims of materialmen and laborers is

*Perry Constr. Co.,* 563 S.W.2d 749 (Ky.App. 1978), cited in and relied upon in part for the decision in *D & B Electric,* does not hold that Ky.Rev.Stat. § 376.070 (1972) creates a statutory trust. It merely recognizes the duty of a contractor to pay materialmen from the payment proceeds received from the owner of the property being improved or repaired.[12]

This court declines to project whether the Kentucky Supreme Court, if confronted with the question, would hold that Ky.Rev. Stat. § 376.070 (1972) creates a statutory trust. Furthermore, it is not necessary for this court to decide whether to follow the holding of *D & B Electric*[13] or *Allgeier & Dyer, Inc.*

### III

The legislative history of Code § 541 clearly circumscribes the rights of the debtor's trustee in bankruptcy:

Though this paragraph [§ 541(a)] will include choses in action and claims by the debtor against others, it is not intended to expand the debtor's rights against others more than they exist at the commencement of the case. For example, if the debtor has a claim that is barred at the time of the commencement of the

case by the statute of limitations, then the trustee would not be able to pursue that claim, because he too would be barred. He could take no greater rights than the debtor himself had.

H.R.Rep. No. 595, 95th Cong. 1st Sess. 367–68, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5963, 6323.

■ The debtor contractually agreed to be bound to Hacker "in the same relationship" that Hacker was bound to the Kentucky School Building Authority. Article # 3 of the debtor's contract with Hacker also incorporates by reference the general conditions of the primary contract. Based on Hacker's rights vis-a-vis the debtor under the incorporated terms of the primary contract, the court finds that the retainage fund is subject to the claims of the debtor's unpaid materialmen, 11 U.S.C.A. § 541(d) (1979).

The following general conditions of the primary contract are relevant:[14]

ARTICLE 34—PAYMENT WITHHELD: Architect may withhold, or on account of subsequently discovered evidence, nullify the whole or a part of any certificate to such extent as may be necessary to protect ... [the general contractor] from loss on account of:

clearly recognized in *Blanton v. Commonwealth,* 562 S.W.2d 90 (Ky.App.1978), a criminal case. However, the opinion does not state either that the contractor's duty is fiducial or that any portion of the payments received from the owner are trust funds.

**12.** The general contractor in *Petter Supply* agreed in writing to pay Petter for any materials invoiced to Gilbert Corporation, a subcontractor on two of the general contractor's projects, by check jointly payable to Petter and Gilbert. Two payments were made as agreed without incident. However, the general contractor made a final payment to Gilbert without determining whether Petter had an unpaid claim against Gilbert and without including Petter as a joint payee of the check. Petter had an unpaid claim for $6,543.10 against Gilbert. The Kentucky Court of Appeals determined that the general contractor was liable to Petter for breach of its agreement concerning the payment procedure. The court also found that Petter was a third-party beneficiary of both the primary construction contract and the general contractor's performance and payment bond.

**13.** A district court decision involving Arkansas and Mississippi statutory law which followed *D & B Electric* was recently reversed. *Georgia Pacific Corp. v. Sigma Service Corp.,* 712 F.2d 962 (5th Cir.1983). No constructive trusts exist in favor of suppliers under either Arkansas or Mississippi statutory law.

In Tennessee, Tenn.Code Ann. § 66–11–138 (1982) (Misapplication of contract payments—Felony—) does not create a statutory trust. *In re Cedar City Elevator & Refrigeration Co.,* 14 B.R. 623 (Bkrtcy.M.D.Tenn.1981); *Sequatchie Concrete Sew. v. Cutter Laboratories,* 616 S.W.2d 162 (Tenn.App.1980). See, however, Tenn.Code Ann. § 66–11–144 (1982) (Portion of contract price held in escrow).

**14.** The provisions are modified to reflect the debtor's agreement to be bound to Hacker "in the same relationship" whereby Hacker was bound to the Kentucky School Building Authority.

. . . .

B. Claims filed or reasonable evidence indicating probable filing of claims.

C. Failure of . . . [subcontractor] to make payments properly . . . for materials and labor.

ARTICLE 35—INDEMNIFICATION:

A. The . . . [subcontractor] shall indemnify the [general contractor] . . . from all claims . . . resulting or arising from the performance of the work under contract . . . .

■ With exceptions immaterial herein, Bankruptcy Code § 542(b) enacts:

[A]n entity that owes a debt that is property of the estate and that is matured . . . shall pay such debt to . . . the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

Assuming arguendo that the debtor's right to the retainage fund had matured on the date of bankruptcy,[15] Hacker had a prepetition claim[16] against the debtor equal to the aggregate amount of the claims of the debtor's unpaid suppliers on the project.

*In re Fulghum Constr. Corp.,* 23 B.R. 147 (Bkrtcy.M.D.Tenn.1982), involves a creditor's setoff rights pursuant to Code § 553(a). Fulghum Construction Corporation was a contractor on two projects for Columbia Gulf Transmission Company (Columbia). Although it knew Fulghum had previously filed a bankruptcy petition, Columbia paid $262,142.21 to Fulghum's suppliers and subcontractors, some of whom had filed lien claims.[17] The source of payment was a retainage fund, intended to partially protect Columbia in the event Fulghum defaulted on its obligations to its subcontractors and vendors. After Columbia notified Fulghum's trustee in bankruptcy of these payments, the trustee filed a complaint against Columbia seeking recovery of an account receivable pursuant to Code § 542. It was stipulated that Fulghum had breached its contracts with Columbia by failing both to prevent the filing of liens against Columbia's property and to furnish evidence that all laborers and materialmen were paid. Judge Lundin consequently had no difficulty finding that Columbia had a prepetition claim against Fulghum "for Fulghum's failure to pay subcontractors and suppliers, for the removal of liens against Columbia's property and for breach of contract." *In re Fulghum,* 23 B.R. at 152. He further found that the mutuality requirement of Code § 553(a) was met, the debt and claim having been between Fulghum and Columbia. Since the maximum amount of Columbia's debt to Fulghum exceeded its claim against Fulghum for payments to lienors, subcontractors, and vendors, the trustee was not entitled to any recovery from Columbia.

The instant case, like *In re Fulghum,* does not involve subrogation to the claims of unpaid subcontractors and suppliers.[18] Instead Hacker is entitled to assert an entitlement to recoupment or setoff in its own right by virtue of the debtor's breach of contract. The mutuality requirement of Code § 553(a) is established because Hacker and the debtor each have an enforceable prepetition claim against one another.

■ Since Hacker enjoys a setoff right against the retainage fund, the trustee may not avoid Hacker's postpetition payments to either AE Systems or Kelly Energy Systems. Furthermore, the balance of the re-

---

**15.** Citing Article 41 of the primary contract, AE Systems and Brennenstuhl-Bryant assert that no payment from the retainage fund was due and owing to the debtor because all of the debtor's suppliers had not been paid. It is not necessary for the court to address this assertion.

**16.** "Claim" is defined in apposite part to mean "right to payment whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disput-

ed, undisputed, legal, equitable, secured or unsecured . . . ." 11 U.S.C.A. § 101(4) (1979).

**17.** It should be noted that Columbia failed to follow the proper procedure in the exercise of its setoff rights. *In re Fulghum,* 23 B.R. at 150 n. 9.

**18.** See 4 *Collier on Bankruptcy* ¶ 553.04[6] (15th ed. 1983).

tainage fund remaining after deduction of the $8,844.81 paid to AE Systems and Kelly Energy Systems is likewise subject to setoff to the extent of Hacker's damages resulting from both the debtor's failure to complete its contract and its failure to pay Brennenstuhl-Bryant and other subcontractors and suppliers.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 7052.